## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **ROBERTA LINDENBAUM**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**REALGY, LLC d/b/a REALGY ENERGY SERVICES**, a Connecticut limited liability company, and **JOHN DOE CORPORATION**,<br><br>*Defendants*. | Case No. : 1:19-cv-2862<br><br>JUDGE PATRICIA A. GAUGHAN |

## PLAINTIFF'S OPPOSITION TO DEFENDANT REALGY, LLC'S MOTION TO STAY CASE

## TABLE OF CONTENTS

**PAGE(S)**

I. INTRODUCTION ................................................................................................................ 1

II. THE APPLICABLE LEGAL STANDARD...................................................................... 5

III. ARGUMENT........................................................................................................................ 6

    A. The Supreme Court Is Not Going To Reject The Unanimous Ruling Of Every Single Other Court To Take Up The Severability Issue ........................ 6

    B. Class Members Will Be Prejudiced By A Stay ...................................................... 10

IV. CONCLUSION.................................................................................................................. 11

**I.      INTRODUCTION**

Defendant argues that this case should be stayed because the Supreme Court is poised to abolish the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, ("TCPA") in order to resolve *Barr v. Am. Ass'n of Political Consultants*, No. 19-631 (U.S. Jan 10, 2020). *Barr* concerns a debt-collection exemption that Congress introduced to the TCPA in 2015.[1]

In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices. The TCPA regulates, among other things, the use of artificial or prerecorded voices when placing calls to cellular or residential telephones. Specifically, the plain language of §227(b)(1)(A)(iii) prohibits the use of an artificial or prerecorded voice to a wireless number in the absence of an emergency or the prior express consent of the called party.

In 2015, Congress amended §227(b)(1)(A)(iii) to exempt calls "made solely to collect a debt owed to or guaranteed by the United States" from the artificial or prerecorded voice restrictions. Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301(a)(1)(A), 129 Stat. 584, 588 (2015). As amended, the statute makes it illegal:

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

---

[1] The clause (the "government debt exemption") simply "excepted from the ban [against unsolicited robocalls] all calls to cell phones 'made solely to collect a debt owed to or guaranteed by the United States.'" *American Association of Political Consultants, Inc. v. FCC*, 923 F.3d 159, 162 (4th Cir. 2019) (quoting Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301(a), 129 Stat. 584, 588 (2015) (amending 47 U.S.C. § 227(b)(1)(A)(iii))).

1

47 U.S.C. §227(b)(1)(A)(iii). Several courts considering the constitutionality of the government debt exemption have found that, as amended, the TCPA survives strict scrutiny. *See, e.g.*, *Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128 (D. Minn. 2017); *Mejia v. Time Warner Cable, Inc.*, No. 15 Civ. 6445, 2017 WL 3278926 (S.D.N.Y. Aug. 1, 2017). Recently, the Fourth and Ninth Circuit have held the government debt exemption violates the First Amendment, but nevertheless found the provision severable and upheld the constitutionality of the pre-amendment statute. *Am. Ass'n of Political Consultants, Inc. v. FCC*, 923 F.3d 159 (4th Cir. 2019) ("AAPC"); *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019). *Every* district court to consider this question in the wake of *AAPC* and *Duguid* has agreed and allowed plaintiffs' claims to proceed under the pre-amendment version of the statute.

*First*, the Supreme Court is never going to abolish the TCPA in its entirety. If the Supreme Court agrees that the government debt exemption is unconstitutional, which is in itself not relevant here, the Court will likely sever that offending language and leave the balance of the TCPA intact. As the Fourth Circuit recognized in the decision giving rise to *Barr*, the Supreme Court has a strong preference for severing flawed portions of statutes to limit the impact of its decisions. *AAPC*, 923 F.3d at 171. With respect to the TCPA specifically, Congress explicitly directed that, if any part of the statute "is held invalid, the remainder . . . shall not be affected." 47 U.S.C. § 608. This severability provision creates "a presumption that Congress did not intend the validity of the statute in question to depend on the validity of the constitutionally offensive provision." *Id.* (citing *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 686 (1987)). The circuit court also observed that, "[f]or twenty-four years, from 1991 until 2015, the automated call ban was 'fully operative,'" and concluded "that a severance of the debt-collection exemption w[ould] not

2

undermine the automated call ban." *Id.* (quoting *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 509 (2010)).

Defendant argues that it is within the realm of possibility that the Supreme Court will decide *Barr* in such a way that results in a wholesale invalidation of the TCPA, Motion to Stay ("MTS") at 3, but nowhere does Defendant attempt to explain why the Supreme Court would decline to sever just the debt-collection exemption from the statute. In fact, while district and appellate courts around the country are divided with respect to the constitutionality of the government debt exemption, they are united with respect to severability. See, e.g., *Katz v. Liberty Power Corp.*, No. 18-cv-10506, 2019 WL 6051442, at *3 (D. Mass. Nov. 15, 2019) ("There is not a substantial ground for a difference of opinion regarding the debt-collection exception's severability."). In this regard, Plaintiff cites below more than a dozen cases finding that the government debt exemption is severable. Defendant's MTS cites none finding otherwise.

*Second*, Defendant's burden on this motion is showing that it is "clear" that deciding Plaintiff and the class's claims would be a "waste of judicial effort." SEC v. Glick, No. 17-cv-2251, 2019 WL 78958, at *6 (N.D. Ill. Jan. 2, 2019) (citing Hess v. Gray, 85 F.R.D. 15, 27 (N.D. Ill. 1979)). Not only has Defendant not undertaken to make that showing - it is probably not possible. The Supreme Court's strong preference in favor of severability, the passage by Congress of a severability provision governing the TCPA, the fact that the statute was "fully operative" for decades prior to the introduction of the debt-collection exemption, and the general absence of any disagreement among trial and circuit courts regarding severability all appear to be absolute obstacles to going down that path.

*Third*, given the above points about severability, however the Supreme Court resolves *AAPC* is not likely to have any bearing whatsoever on the issues in this case because this case

has nothing to do with debt collection or the government debt exemption. Moreover, any further delay in this case would allow ongoing harms to Plaintiff and the Class, as robocalls on behalf of Realgy continue unabated.[2] Plaintiff and the class continue to suffer actual harm due to the ceaseless nature of calling campaigns undertaken on behalf of Realgy. Moreover, given that Plaintiff and the Class will need to seek discovery and call records from third parties, which only becomes more difficult over time as memories fade and documentation more difficult to obtain, a stay has great potential to cause irreparable prejudice to Plaintiff's case.

Defendant would have this Court believe that district courts are regularly staying TCPA cases due the pendency of the Supreme Court proceedings in *AAPC*. But that is not accurate. Just last week, Judge Leinenweber of the Northern District of Illinois denied a near-identical motion to stay in a TCPA case, recognizing:

> The 2015 debt collection provision is narrow and not implicated in this case. Therefore, whether it is upheld or severed does not affect these proceedings. Only a seismic shift, such as invalidation of the TCPA, would affect this case.

*Bakov v Consolidated World Travel et al.*, Case No. 15-cv-2980 (N.D. Ill. February 27, 2020) (hearing transcript at 5) (attached hereto as Exhibit A). Judge Leienweber's ruling is practical and correct given that the likelihood that the Supreme Court will invalidate the entire TCPA is slim at best. This Court should reach a similar conclusion here.

Defendant's motion to stay this litigation should therefore be denied in its entirety.

---

[2] Indeed, Plaintiff herself received yet another robocall on behalf of Realgy just yesterday, and other complaints continue to pop up *See e.g.* https://www.bbb.org/us/ct/west-hartford/profile/energy-conservation-products/realgy-llc-0111-24000368/complaints

## II.     THE APPLICABLE LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants[.]" *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). A stay is an "intrusion into the ordinary processes of administration and judicial review," *Nken v. Holder*, 556 U.S. 418 (2009); *Virginia Petroleum Jobbers Assn. v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958) (*per curiam*), and accordingly "is not a matter of right." This is true even were irreparable injury is a possibility *Virginian R. Co. v. United States*, 272 U.S. 658, 672 (1926).

The traditional standard for a stay considers four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776, (1987).

Courts within the Sixth Circuit have summarized the relevant factors as follows: "the potential dispositive effect of the other case, judicial economy achieved by awaiting adjudication of the other case, the public welfare, and the relative hardships to the parties created by withholding judgment." *Caspar v. Snyder*, 77 F. Supp. 3d 616, 644 (E.D. Mich. 2015) (denying the motion to stay a case pending the resolution of a Supreme Court case); *see also Michael v. Ghee*, 325 F. Supp. 2d 829, 831 (N.D. Ohio 2004) (outlining the same four factors).

The Sixth Circuit has recognized that "[t]he most important factor is the balance of the hardships[.]" *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627-28 (6th Cir. 2014). Courts, however, "must tread carefully in granting a stay of proceedings since a party has a right to a determination of its rights and liabilities without undue delay." *Ohio Envtl. Council v. U.S. Dist.*

5

*Ct.*, 565 F.2d 393, 396 (6th Cir. 1977) (citing *Landis*, 299 U.S. at 254-55). The movant bears the burden of showing "that there is pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order." *Id.* at 396; *see also Clinton v. Jones*, 520 U.S. 681, 708 (1997) ("The proponent of a stay bears the burden of establishing its need.")

**III.     ARGUMENT**

    **A. The Supreme Court Is Not Going To Reject The Unanimous Ruling Of Every Single Other Court To Take Up The Severability Issue**

In *AAPC*, the Fourth Circuit took up three issues: (1) the appropriate level of scrutiny under which to examine the government debt exemption, (2) whether the government debt exemption "survives the applicable level of scrutiny," and (3) if not, "whether to strike the automated call ban in its entirety, or whether to simply sever the flawed exemption therefrom." 923 F.3d at 165. Ultimately, the Fourth Circuit found that strict scrutiny applied and that the government debt exemption was unconstitutional, but that it was severable and therefore did not mandate striking the automated call ban. *Id.* at 161. A petition for certiorari was filed and granted. See --- S. Ct. ---, 2020 WL 113070 (Jan. 10, 2020). But an examination of the decisions to date regarding the government debt exemption makes clear that the real issue to be decided by the Supreme Court is the validity of the government debt exemption itself, while the severability of the remainder of the statute is not legitimately in question.

The Supreme Court has made clear that "invalid portions of a statute are to be severed unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not." *INS v. Chadha*, 462 U.S. 919, 931-32 (1983) (quotation marks omitted). Thus, "the invalid part may be dropped if what is left is fully operative as a law," *Regan v. Time, Inc.*, 468 U.S. 641, 653 (1984), and would continue to

6

"function in a manner consistent with the intent of Congress." *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685 (1987) (emphasis omitted).

To be sure, other courts have reached varying conclusions as to the constitutionality of the government debt exemption. Compare *Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128 (D. Minn. 2017) and *Mejia v. Time Warner Cable, Inc.*, 2017 WL 3278926 (S.D.N.Y. Aug. 1, 2017) (finding that government debt exemption was constitutional), with *AAPC*, 923 F.3d 159 (4th Cir. 2019); *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019) (finding that government debt exemption was unconstitutional). Indeed, the AAPC case itself was an appeal to the Fourth Circuit from a district court's opinion finding that the government debt exemption was constitutional. See 923 F.3d at 161 ("The district court … ruled that it does not violate the Free Speech Clause."). Thus, it is unsurprising that the Supreme Court granted certiorari in order to provide guidance on this dispute.

By contrast, the argument that the government debt exemption invalidates the entirety of the TCPA is a throw-away argument that has never worked in any court, ever. And it has been tried repeatedly. Every single time this issue was taken up, courts found that the government debt exemption was severable and therefore could not invalidate the rest of the statute. *See AAPC*, 923 F.3d at 161 ("[W]e are satisfied to sever the flawed exemption from the automated call ban"); *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1157 (9th Cir. 2019) ("We reject Facebook's challenge that the TCPA as a whole is facially unconstitutional, but we sever the debt collection exception as violative of the First Amendment."); *Edwards v. Conn's, Inc.*, No. 2:18-cv-01998, 2019 WL 4731942, at *1 (D. Nev. Sept. 27, 2019) ("Moving forward, all claims in this case will continue under the pre-amendment TCPA, which the Ninth Circuit has held to be content-neutral and consistent with the First Amendment."); *Katz*, 2019 WL 4645524, at *8 ("[T]he Court

7

concludes that the government debt-collection exception of the TCPA is severable. . . . Therefore, the claims in this case are unaffected by the debt-collection exception's unconstitutionality.); *Woods v. Santander Consumer USA Inc.*, No. 2:14-cv-02104-MHH, 2017 WL 1178003, at *3 n.6 (N.D. Ala. Mar. 30, 2017) ("Even if the Court were to … find that the government-debt exception is invalid, the Court would not deem the entire TCPA to be unconstitutional because the [government-debt] exception [is] severable from the remainder of the statute." (internal quotation marks and citation omitted; alterations in original)); *Sliwa v. Bright House Networks, LLC*, No. 2:16-cv-235, 2018 WL 1531913, at *6 (M.D. Fla. Mar. 29, 2018) ("There can be little doubt that, upon a finding that the Government–Debt Exception violates the First Amendment, the proper course would be to sever that clause from the rest of Section 227(b)(1)(A)(iii)."); *Wijensinha v. Bluegreen Vacations Unlimited, Inc.*, No. 19-20073-CIV, 2019 WL 3409487, at 6 (S.D. Fla. Apr. 3, 2019) ("[I]f the amended TCPA were deemed unconstitutional, a finding of severability would cure the constitutional defect and preclude invalidation of the entire statute."); *Parker v. Portfolio Recovery Assocs., LLC*, No. 18-cv-02103, 2019 WL 4149436, at *2 (C.D. Cal. July 11, 2019) ("[S]pecific evidence of the legislature's preference for retaining the valid TCPA provision is provided.").[3]

---

[3] *See also Smith v. Truman Rd. Dev., LLC*:

> Given the general presumption in favor of severability, the apparent Congressional intent that the unconstitutional provision be severed, and the TCPA's demonstrated ability to be fully operative without the severed provision, the Court finds the government-debt exception is severable. . . . Therefore, Defendants' motion to dismiss on the ground that the government debt exception is unconstitutional and unseverable is denied.

2019 WL 5654352, at *16 (W.D. Mo. Oct. 31, 2019); *Hand v. Beach Entm't KC, LCC*, 2019 WL 5654351, at *16 (W.D. Mo. Oct. 31, 2019) (same); *Taylor v. KC VIN, LLC*, 2019 WL 6499140, at *16 (W.D. Mo. Dec. 3, 2019) (same); *Doohan v. CTB Inv'rs, LLC*, 2019 WL

8

Despite the fact that this issue has been taken up by courts repeatedly, Defendant cites zero cases finding that the government debt exemption could invalidate the entire statute. Instead, it cites a group of cases generally finding, in the context of other statutes, that invalidation of a clause may lead to invalidation of an entire statute. *See* MTS at 6. But those citations are inapplicable because they do not address the TCPA or the government debt exemption.

There is good reason why every decision has come down on the same side. Congress made its intent very clear: "If any provision of this chapter [containing the TCPA] … is held invalid the remainder … shall not be affected thereby." 47 U.S.C. § 608. "While not dispositive, this unambiguous language endorsing severability relieves us of a counterfactual inquiry as to congressional intend and creates a presumption of severability absent 'strong evidence that Congress intended otherwise.'" *Duguid*, 926 F.3d at 1156 (quoting *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 686 (1987)). "History reaffirms what Congress said. The TCPA has been 'fully operative' for more than two decades. Then, with little fanfare, Congress appended the comparatively modest debt-collection exception as a small portion of the 2015 budget bill. The newly enacted exception did not suddenly and silently become so integral to the TCPA that the statute could not function without it." *Id.* at 1156-57 (internal quotations omitted).

This distinguishes the TCPA from other statutes which courts held were completely invalidated due to problematic portions. For instance, in *Rappa v. New Castle County*, 18 F.3d 1043, 1073 (3d Cir. 1994), the court held that "the proper remedy for content discrimination generally cannot be to sever the statute so that it restricts more speech than it did before—at least absent quite specific evidence of a legislative preference for elimination of the exception."

---

6497433, at *16 (W.D. Mo. Dec. 3, 2019) (same).

9

(emphases added). But there was a "specific evidence of legislative preference for elimination of the exception" here, as noted above. This rationale plainly does not apply to the TCPA.

So yes, there is a case going to the Supreme Court in which the argument advanced by Defendant is technically being advanced. But a review of the fact that other courts have repeatedly come down on the same side of this issue strongly suggests that the Supreme Court has accepted the case to rule on the constitutionality of the government debt exemption – not to undo the well-established holding about severability reached by every other court. And because the allegations of this case do not involve anything addressed in the government debt exemption, the Supreme Court's decision is certain to be immaterial to this litigation.

### B. Class Members Will Be Prejudiced By A Stay

A delay occasioned by a stay at this point, where the issues are not framed for discovery, where discovery has not taken place, and where the passage of time may affect witness memories, places Plaintiff and the Class at a distinct, and unnecessary disadvantage. This is particularly true here, where, as the case law on severance suggests, the Supreme Court takes the usual position of agreeing on the constitutional issue and in accord with their jurisprudence, affirms the remedy of severance. Plaintiff's case will then move on apace, but only after a possibly lengthy delay. Any delay in deposing witnesses is a problem in a fully-functioning economy where job mobility may make tracking down people who are current employees difficult when they change jobs during the delay. Additionally, as both sides know all too well, third party telemarketing firms of the sort employed by Realgy (or on behalf of Realgy) are quite transient in nature. The delay hurts both parties, but it hurts Plaintiff hardest because Plaintiff has the burden of proof.

Moreover, Congress enacted the TCPA because land line and cellular telephone lines were being abused by telemarketers. Class action litigation involving the TCPA is litigation in the public interest. *Cf. In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508 (S.D. Mich. 2003) (antitrust action serves the public interest by ensuring effective enforcement of the antitrust laws and deterrence of anti-competitive conduct in the marketplace). Cases like this one serve to place advertisers on notice that abuses will not be tolerated and will be prosecuted. It is in the public interest to proceed swiftly with this case.

## IV.  CONCLUSION

For the reasons set forth above Plaintiff respectfully requests that the Court deny Defendant's Motion to stay in its entirety

Dated: March 4, 2020                                    Respectfully submitted,

**SAVETT LAW OFFICES, LLC**

By:   */s/ Adam T. Savett*
            Adam T. Savett

Adam T. Savett (VA73387)
adam@savettlaw.com
2764 Carole Lane
Allentown, PA 18104
Phone: (610) 621-4550
Fax: (610) 978-2970

Katrina Carroll
kcarroll@carlsonlynch.com
Kyle Shamberg
kshamberg@carlsonlynch.com
**CARLSON LYNCH LLP**
111 W. Washington Street
Suite 1240
Chicago, IL 60602
Phone: (312) 750-1265
Fax: (312) 483-1032

*Counsel for Plaintiff and the Putative Class*

## CERTIFICATE OF COMPLIANCE

I hereby certify that PLAINTIFF'S OPPOSITION TO DEFENDANT REALGY, LLC'S MOTION TO STAY CASE adheres to the page limitations set forth in Local Rule 7.1(f).

                                                      */s/ Adam T. Savett*
                                                       Adam T. Savett

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2020, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, by which notification of such filing was electronically sent and served on all parties.

                                                       */s/ Adam T. Savett*
                                                       Adam T. Savett