# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| ROBERTA LINDENBAUM, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> REALGY, LLC d/b/a REALGY ENERGY SERVICES, a Connecticut limited liability company, and JOHN DOE CORPORATIONS 1–10, <br><br> Defendants. | Case No. 1:19-CV-02862-PAG <br><br> Judge Patricia A. Gaughan |

## REALGY, LLC'S MOTION TO DISMISS AMENDED COMPLAINT AND BRIEF IN SUPPORT

# TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | RELEVANT FACTS | | 2 |
| III. | RELEVANT LAW | | 3 |
| | A. | Motion to Dismiss for Lack of Subject-Matter Jurisdiction | 3 |
| | B. | The Holding in *AAPC* | 4 |
| IV. | ARGUMENT | | 6 |
| | A. | *AAPC* Deprives the Court of Subject-Matter Jurisdiction over Plaintiff's Claims Because the Violation of an Unconstitutional Law Is Not a Justiciable Question | 6 |
| | B. | The Three-Justice Dicta in Footnote 12 of the *AAPC* Decision Does Not Warrant a Different Result | 8 |
| | C. | The Recent Supreme Court Opinion in *Seila Law v. CFPB* Supports Dismissal | 11 |
| V. | CONCLUSION | | 13 |

I.   INTRODUCTION

"An act of congress repugnant to the constitution cannot become a law." *Marbury v. Madison*, 5 U.S. 137, 138 (1803). In this Telephone Consumer Protection Act ("TCPA") class action, Plaintiff Roberta Lindenbaum ("Plaintiff") asks the Court to cast aside this bedrock constitutional principle in seeking damages against Realgy, LLC ("Realgy") for allegedly violating the TCPA's "automated-call ban"—a ban that the Supreme Court just held was unconstitutional in *Barr v. American Association of Political Consultants, Inc.*, 140 S.Ct. 2335, 2346 (2020) (hereinafter, "*AAPC*").[1] Specifically, the Supreme Court held that the TCPA's automated-call ban, upon which Plaintiff's case is entirely based, was an unconstitutional content-based restriction when combined with the government debt exception—a carveout that allowed only government debt collectors to violate the restriction. In other words, the automated-call ban has been unconstitutional, and thus entirely unenforceable, from the enactment of the government debt exception in 2015 until the Court severed it in *AAPC*. This inescapable conclusion, that Plaintiff is suing based on violations of an unconstitutional statute, is fatal to her entire action.[2]

It is true that the Supreme Court took the additional step in *AAPC* of preserving the TCPA

---

[1]   Because the Supreme Court decided the constitutional challenge to the automated-call ban in *AAPC*, Federal Rule of Civil Procedure 5.1 does not apply to the instant filing and a notice of constitutional challenge is not required. *See* Fed. R. Civ. P. 5.1. If the Court determines otherwise, Realgy will promptly file such a notice.

[2]   Though it is beyond the scope of this Motion, Plaintiff's case is also fatally flawed because neither Realgy nor its vendors have a record of placing any calls to Plaintiff's telephone numbers. That is unsurprising because Realgy expressly prohibits the use of pre-recorded messages of any kind. Plaintiff's amended complaint even acknowledges that the type of calls Plaintiff allegedly received could be "legitimate . . . *[or] could be a scam*"— *i.e.*, from scammers posing as legitimate companies to obtain valuable personal information. Dkt. 14 at ¶ 18 (emphasis supplied). But the parties need not spend significant time and effort litigating a class action about calls Realgy did not place or authorize others to place. That is because this case ends for a simple, threshold reason: the sole statutory provision under which Plaintiff sues was unconstitutional during the time the calls at issue occurred, thus depriving the Court of subject-matter jurisdiction over the claims.

1

as a whole by severing the government debt exception. But the fact that the Supreme Court cured the constitutional infirmity by severing the carve-out such that the automated-call ban can now be enforced *prospectively* does not change the impact of the ruling in this case: that Realgy, consistent with over two hundred years of constitutional jurisprudence, could not have violated a statutory provision that was unconstitutional at the time of the alleged violation.

An example illustrates this point. If, instead of government debt collectors, Congress passed a carve-out for the Donald Trump campaign that was later held to be unconstitutional, the disfavored speakers (any other speaker, including an opposing campaign) could not then be punished for making calls during the period of time for which the Trump campaign was given a free pass. That is to say, the disfavored speakers could not be punished for violating a flagrantly unconstitutional speech restriction. The same exact result follows here: Realgy cannot be penalized for allegedly violating the automated-call ban that was held unconstitutional by the Supreme Court for the period of time the favored speakers (government debt collectors) were given a free pass. Thus, Plaintiff's action, which is premised on purported violations that occurred before July 6, 2020 (the date of the *AAPC* decision), is entirely barred and must be dismissed.

## II. RELEVANT FACTS

On December 11, 2019, Plaintiff filed this putative class action, alleging that she "received an unsolicited, pre-recorded phone call … from, or on behalf, [*sic*] of Defendants" on her cellar phone on November 26, 2019. Dkt. 1 at ¶ 26. According to Plaintiff, the voice "stated that John Doe Corporation was calling to offer Plaintiff energy services." *Id.* at ¶ 27. Plaintiff then "pressed '1' to speak with a live person and was connected with one of John Doe Corporation's telephone representatives." *Id.* at ¶ 28.

On March 10, 2020, Plaintiff filed an amended class action complaint. Dkt. 14. Therein, Plaintiff alleged that in addition to the November 26, 2019 call, she received a similar pre-recorded voice call to her separate, landline phone number on March 3, 2020. *Id.* at ¶¶ 32–33. Though Plaintiff alleges Realgy is responsible for the calls at issue, she acknowledges that the calls could also "be a scam" perpetrated by individuals posing as a legitimate company to obtain sensitive personal information. *Id.* at ¶ 18.

Based on these purported communications to her cell phone and landline numbers, Plaintiff asserts two claims for violations of the TCPA's automated-call ban provision of 47 U.S.C. § 227(b)(1)(A)(iii). *See id.* at ¶¶ 73–88. This provision makes it unlawful for any person to place calls to a cellular phone without consent using an artificial/pre-recorded voice, among other things. *Id.*; 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiff also asks the Court to certify two nationwide TCPA classes for violations of the automated-call ban: one based on purportedly pre-recorded calls to cellular phone lines and the other based on purportedly pre-recorded calls to residential landlines. *See* Dkt. 14 at ¶¶ 64–65.

## III. RELEVANT LAW

### A. Motion to Dismiss for Lack of Subject-Matter Jurisdiction.

"Federal Rule of Civil Procedure 12(b)(1) allows dismissal for 'lack of jurisdiction over the subject matter' of claims asserted in the [c]omplaint." *See Yedlick v. Comm'r, IRS*, No. 1:19-CV-2139, 2020 WL 364245, at *2 (N.D. Ohio Jan. 21, 2020) (Gaughan, J.) (citing Fed. R. Civ. P. 12(b)(1)). A motion to dismiss for lack of subject-matter jurisdiction asks a court to determine whether it has the constitutional power to adjudicate the case and may constitute "either a facial attack or a factual attack." *See Meredith v. United Collection Bureau, Inc.*, No. 1:16-CV-1102, 2018 WL 1782854, at *2 (N.D. Ohio Apr. 13, 2018) (Gaughan, J.) (cits. omitted). Facial attacks "question the sufficiency of the jurisdictional allegations in the complaint," whereas factual attacks

"challenge the actual fact of the court's jurisdiction." *Id.* (citations omitted). Regardless of which form the motion ultimately takes, the plaintiff "has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).[3]

Additionally, the Constitution limits the federal judicial power to designated "cases" and "controversies." U.S. Const., Art. III, § 2. Thus, "[i]t is well settled that federal courts may act only in the context of a justiciable case or controversy." *SEC v. Med. Comm. for Human Rights*, 404 U.S. 403, 407 (1972) (internal quotation omitted). The Supreme Court has long held that "if the laws are unconstitutional and void, the [federal court has] no jurisdiction of the causes." *Ex parte Siebold*, 100 U.S. 371, 377 (1880); *see also Montgomery v. Louisiana*, 136 S. Ct. 718, 724 (2016) (sentence under unconstitutional law is void because state was deprived of authority to impose it); *United States v. Baucum*, 80 F.3d 539, 540-41 (D.C. Cir. 1996) ("It is true that once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)[.]").

### B. The Holding in *AAPC*.

In January, the Supreme Court granted *certiorari* in *AAPC*, framing the issues as "[1] [w]hether the government-debt exception to the TCPA's automated-call restriction violates the First Amendment, and [2] whether the proper remedy for any constitutional violation is to sever the exception from the remainder of the statute." Question Presented Report, *Barr v. AAPC*, No. 19-631, https://www.supremecourt.gov/docket/docketfiles/html/qp/19-00631qp.pdf (last visited

---

[3] Though Realgy denies that it placed the calls at issue—meaning the Court also lacks jurisdiction because the complained-of conduct is not fairly traceable to Realgy, which did not place the calls—it requests the Court dismiss this action based on the face of the amended complaint alone.

4

Aug. 4, 2020). The Supreme Court did not grant certiorari to consider whether the statute was enforceable pre-severance; nor did the parties ever brief that issue. *Id*. Indeed, since *AAPC* was a direct challenge to the automated-call ban, there was no underlying litigation and, thus, no occasion for the Supreme Court to decide the impact of the decision on pending TCPA cases like this one. *See id*.

On July 6, 2020, the Supreme Court decided *AAPC*. The Court's Opinion was a deeply fractured plurality, but a majority of Justices still agreed that the automated-call ban, upon which Plaintiff's case is entirely based, was an unconstitutional content-based restriction when combined with the government debt exception. *AAPC*, 140 S. Ct. at 2346 ("The initial First Amendment question is whether the robocall restriction, with the government-debt exception, is content-based. The answer is yes."). Specifically, the automated-call ban combined with the government debt exception "impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment." *Id*. at 2344. Because the restriction was content-based, it was subject to strict scrutiny, which it failed to pass.[4] *Id*. Six justices agreed with this conclusion. *Id*. Rather than scrapping the entire statute, however, the Supreme Court opted to save the TCPA by severing the government debt exception, though only three Justices (Kavanaugh, Roberts, and Alito) joined in the plurality's rationale for doing so. *Id*. at 2352–54

---

[4] Notably, strict scrutiny is the same standard the Supreme Court would apply to viewpoint discrimination, meaning the analysis and result in *AAPC* would have been the same here if the exception had favored a particular political party, race, or ethnic group. *See AAPC*, 140 S. Ct. at 2347 ("[T]he robocall restriction with the government-debt exception is content-based. Under the Court's precedents, a law that is content based is subject to strict scrutiny." (internal quotations omitted)).

## IV. ARGUMENT

### A. *AAPC* Deprives the Court of Subject-Matter Jurisdiction over Plaintiff's Claims Because the Violation of an Unconstitutional Law Is Not a Justiciable Question.

"'[A]n unconstitutional law is void, and is as no law.'" *Montgomery*, 136 S. Ct. at 731 (quoting *Siebold*, 100 U.S. at 376). A violation of such a law is "not merely erroneous, but is illegal and void, and . . . [bestows upon] the Circuit Court . . . no jurisdiction of the causes." *Siebold*, 100 U.S. at 376-377; *see also Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 759-760 (1995) ("A court does not—in the nature of things it *can* not [*sic*]—give a 'remedy' for an unconstitutional statute, since an unconstitutional statute is not in itself a cognizable 'wrong.'") (emphasis in original and citing *Marbury*, 5 U.S. at 178) (Scalia, J. concurring); *McClure v. Middletown Hosp. Ass'n*, 603 F. Supp. 1365, 1368 (S.D. Ohio 1985) ("We accept the proposition that unconstitutional statutes are generally void *ab initio*[.]").

Here, Plaintiff's action is based on alleged violations of the automated-call ban prior to July 6, 2020, at a time during which the Supreme Court in *AAPC* determined this ban was unconstitutional (and prior to the Supreme Court's "cure" of the constitutional infirmity through severance of the government debt exception). Accordingly, because Realgy could not have violated an unconstitutional statute and this Court cannot provide a remedy for a violation of an unconstitutional statute, there is no justiciable federal question, compelling dismissal.

The necessity of this result is illustrated by numerous cases. Indeed, imposing liability for speech that allegedly violates an unconstitutional statute is irreconcilable with Supreme Court precedent and fundamental due-process and equal protection principles. In *Grayned v. City of Rockford*, 408 U.S. 104, 107 n.2 (1972), the Supreme Court noted, in a constitutional challenge to a content-based speech restriction, that courts "must consider the facial constitutionality of the ordinance in effect when [the defendant] was arrested and convicted." In other words, the relevant

inquiry is whether the offending statute was constitutional at the time the violation occurred, not whether it has subsequently been cured by judicial or legislative action. Thus, in this case, the automated-call ban must be assessed at the time Realgy allegedly committed the violations, which was prior to July 6, 2020, at a time when the ban was unconstitutional. *See Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1699 n.24 (2017) (noting in a majority opinion that a "defendant convicted under a law classifying on an impermissible basis may assail his conviction without regard to the manner in which the legislature might subsequently cure the infirmity"); *United States v. Stroke*, No. 1:14-CR-45S, 2017 WL 2643666, at *2 (W.D.N.Y. June 20, 2017) ("probable cause cannot rest on a statute that was unconstitutional at the time of an alleged incident").

Similarly, in *Montgomery*, the Supreme Court addressed whether a new constitutional ruling from 2012 interpreting the Eighth Amendment to ban mandatory life sentences for juvenile homicide offenders must be applied retroactively to a juvenile who had been sentenced to life without parole in 1963. *See* 136 S. Ct. at 723. The Supreme Court concluded the answer is yes: a "penalty imposed pursuant to an unconstitutional law is no less void because the prisoner's sentence became final before the law was held unconstitutional. There is no grandfather clause that permits States to enforce punishments the Constitution forbids. To conclude otherwise would undercut the Constitution's substantive guarantees." *Id*. at 730 (citing *United States v. U.S. Coin and Currency*, 401 U.S. 715, 724 (1971) ("'No circumstances call more for the invocation of a rule of complete retroactivity' than when "'the conduct being penalized is constitutionally immune from punishment.'")); *see also Waldron v. United States*, 146 F.2d 145, 147-148 (1944) (vacating judgment against criminal defendant based on violation of unconstitutional statute, explaining "inspection of the record discloses clearly that the court was without jurisdiction to enter the judgment").

These decisions unanimously recognize the fundamental unfairness of imposing penalties for violations of a statute that was concededly unconstitutional—and thus "void"—when the alleged violations occurred. They also make obvious, intuitive sense. If the rule were otherwise, the political party in power could pass similar unconstitutional exceptions to favor its own preferred speech, knowing it could only be penalized on a prospective basis once a challenge reached the Supreme Court. To put this example in starker terms, if a Republican Congress added an exception to the TCPA permitting Republican campaigns to make calls that were prohibited for everyone else and the Supreme Court severed that exception, litigants could not (and would not) legitimately argue that a Democratic Political Action Committee could be penalized for violating the pre-severance statute but that the Republican campaign could only be penalized post-severance. This would be an untenable result—and it is not the law. *See Baucum*, 80 F.3d at 540-41 ("It is true that once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)[.]")

### B. The Three-Justice Dicta in Footnote 12 of the *AAPC* Decision Does Not Warrant a Different Result.

Speaking for a three-Justice plurality, Justice Kavanaugh states in footnote 12:

> As the Government acknowledges, although our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate. [citation omitted]. *On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.*

*AAPC*, 140 S. Ct. at 2355, n .12 (emphasis added). Though the footnote is admittedly vague, it does not change the conclusion that the Court lacks subject-matter jurisdiction over the Plaintiff's claims.

This is true for several reasons. *First*, the footnote consists of pure obiter dicta,[5] which should be afforded little weight, particularly because it was only the opinion of three justices. Thus, it was correctly characterized by Justices Thomas and Gorsuch (both of whom criticized this dicta) as only a non-binding "suggestion." *See id*. at 2363. For that reason, it does not change the binding effect of the *holding* of the case, adopted by a *majority* of Justices: that the automated-call ban combined with the government-debt exception was unconstitutional pre-severance (*i.e.*, going back to 2015 when the debt exception was enacted). *See id*. at 2343 ("Six Members of the Court today conclude that Congress has impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment.").[6] And the result of *AAPC*'s binding holding is, as explained above, that the automated-call ban cannot be enforced against Realgy in this case, based on over 200 years of prior Supreme Court precedent. *See supra* IV.A.

*Second*, though the footnote is admittedly ambiguous, based on the circumstances, statements in the footnote itself, and prior Supreme Court precedent, it is most reasonably interpreted as referring to only past *judgments*. In other words, the plurality did not mean *AAPC*

---

[5] *Black's Law Dictionary* defines obiter ("something said in passing") dictum as a "comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not *precedential* (though it may be considered persuasive)." 879 (7th ed. 2000) (emphasis added). Chief Justice Marshall characterized it in *Cohens v. Virginia*, 19 U.S. 264, 399, 5 L. Ed. 257 (1821) as dicta that "may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision."

[6] Put another way, the holding of the case is binding precedent and the footnote is not. *Cf. United States v. Marlow*, 278 F.3d 581, 588 n. 7 (6th Cir. 2002) (serious consideration afforded to dicta adopted by majority—which the *AAPC* dicta was not—and where, unlike here, there is no "reason for disregarding it, such as age or *subsequent statements undermining its rationale*") (emphasis supplied); *see also AAPC*, 140 S. Ct. at 2366 (shielding "only government-debt collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination [the Supreme Court says it is] seeking to eliminate.") (Gorsuch, J. concurring).

to negate or undo liability against parties that has already been *adjudicated*.[7] This is consistent with prior Supreme Court precedent that recognizes "a distinction between the application of a change in the law that takes place while a case is on direct review on the one hand, and its effect on a final judgment under collateral attack, on the other hand." *See Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 710-711 (1974). This is also the only way to read the footnote consistent with *Seila Law*, in which the same three Justices who joined the plurality in *AAPC*—and just one week before *AAPC* decision—cast doubt on the viability of actions taken by the Consumer Financial Protection Bureau ("CFPB") during the time its leadership structure was unconstitutional. *See Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2208-09 (2020) (discussed in detail *infra* at Section IV.C).

In short, coupled with the Supreme Court's long-standing precedent, its recent decision in *Seila Law*, and the fact the parties did not even brief the issue, the last sentence of the plurality's footnote 12 cannot reasonably be interpreted to allow courts in ongoing cases to penalize defendants under a statute that was unconstitutional at the time of the alleged conduct. Indeed, the Supreme Court is "a court of review, not of first view," and it "ordinarily will not decide questions not raised or litigated in the lower courts," certainly not in one sentence without any analysis, and certainly not when doing so would require overruling prior precedent. *See McLane Co., Inc. v. E.E.O.C.*, 137 S. Ct. 1159, 1170 (2017) (internal quotations omitted); *see also City of Springfield, Mass. v. Kibbe*, 480 U.S. 257, 259 (1987).

---

[7] *Black's Law Dictionary* defines liability as the "quality or state of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment . . . ." 739 (7th ed. 2000). Thus, "liability" implies a preexisting determination (*e.g.*, from a court of law) to hold a party responsible.

10

**C.      The Recent Supreme Court Opinion in *Seila Law v. CFPB* Supports Dismissal.**

As noted above, the Supreme Court decided *Seila Law* a week before *AAPC*, and *Seila Law* strongly supports the conclusion that the automated-call ban cannot be enforced against Realgy in this case. 140 S. Ct. at 2208–09. In *Seila Law*, a three-justice plurality comprised of Justices Roberts, Alito, and Kavanaugh (the same plurality as the severance portion of the *AAPC* decision) recognized the long-standing principle that unconstitutional laws are unenforceable during the time they are unconstitutional, even if later cured prospectively through severance. *See id*. A majority of the Justices further concluded that the CFPB's leadership structure, consisting of a single director removable only for cause, was unconstitutional because it violates the separation of powers. *Id*. at 2204. To cure this constitutional infirmity, the three-justice plurality (Roberts, Alito, and Kavanaugh), in Part IV of the opinion, opted to sever the director's removal protection from the President. *Id*. at 2207-08. In so holding, this plurality acknowledged that actions taken under the CFPB's constitutionally infirm leadership structure (such as investigations, litigation, and even promulgation of regulations) may require dismissal/invalidation—*unless* subsequent ratification has occurred. *See id*. at 2208 ("The parties dispute whether this alleged ratification in fact occurred and whether, if so, it is legally sufficient to cure the constitutional defect in the original demand . . . . A remand for the lower Courts to consider those questions in the first instance is therefore the appropriate course[.]"). Thus, the Supreme Court remanded to the lower court to determine "the lingering ratification issue." *Id*. In further evidence of the seriousness of the problem created by the Court's holding that the CFPB's leadership structure was unconstitutional for a period of time, the CFPB thereafter took action (the day after the *Seila Law* decision) to formally ratify actions taken from January 4, 2012, through June 30, 2020 in order to ensure they are not attacked on grounds of being void. *See CFPB Ratifies Prior Regulatory Actions*, CFPB,

https://www.consumerfinance.gov/about-us/newsroom/cfpb-ratifies-prior-regulatory-actions/ (last visited July 27, 2020).

If the constitutionality of the statute posed no problems to the viability of acts taken by the CFPB while its structure was unconstitutional, then there would have been no need for the lower courts to determine the extent to which ratification occurred and no need for the CFPB to ratify its own prior acts. Put another way, by remanding the ratification issue to the lower court, the Supreme Court (including the *same* three justices who severed the debt exemption in *AAPC*) recognized that, absent ratification, the acts taken by the CFPB may be deemed void unless they were ratified on a *prospective* basis.

The logic underlying the Supreme Court's application of the severance doctrine in *Seila Law* applies with equal force to the automated-call ban. Put differently, the Supreme Court's severance of the government debt exception cured the ban's infirmity on a prospective basis. But it did not (and could not) cure the infirmity with respect to calls made during the time the law was unconstitutional—at the time it impermissibly favored one group of speakers over another.

Further, the constitutional defect in *AAPC* was far more severe than in *Seila Law*, where the defect was procedural, thereby allowing the new CFPB leadership to ratify prior acts committed by the CFPB's then-unconstitutional leadership with no harm to the affected parties. In contrast, the nature of the constitutional defect in the TCPA was *substantive*, favoring one group of speakers over another, with the disfavored speakers potentially on the hook for ruinous liability—hundreds of millions of dollars in statutory penalties that are akin to criminal penalties[8]—while the favored speakers were entirely absolved. Unlike the procedural defect in

---

[8]  *See, e.g., McMillion, et al. v. Rash Curtis & Assoc.*, No. 4:16-CV-03396-YGR (N.D. Cal. May 4, 2020) (judgment awarding class damages for TCPA violations in amount of $267,349,000).

12

*Seila Law*, this substantive defect cannot be cured through ratification. Accordingly, consistent with the Court's logic in *Seila Law*, the Court cannot impose liability against Realgy for violating the automated-call ban during the time it was constitutionally infirm. *See also Arthrex, Inc. v. Smith & Nephew, Inc.*, 953 F.3d 760, 767 n. 2 (Mem) (D.C. Cir. 2020) (denial of petition for *en banc* review) ("judicial severance of one portion of an unconstitutional statute is, by necessity, only applicable prospectively") (O'Malley, J. concurring).

## V. CONCLUSION

*AAPC* held that the TCPA's automated-call ban was an unconstitutional content-based restriction when combined with the government debt exception that was enacted in 2015 and in place until the Supreme Court severed it on July 6, 2020. *AAPC*, 140 S. Ct. at 2343. The violations of the automated-call ban asserted by Plaintiff occurred during the time the ban was unconstitutional. Thus, the Court should dismiss the action because it lacks jurisdiction to enforce a void law against Realgy. *See Marbury*, 5 U.S. at 180.

Dated: August 4, 2020.

Respectfully submitted,

**KABAT CHAPMAN & OZMER LLP**

*/s/ Ryan D. Watstein*
Ryan D. Watstein (*pro hac vice*)
rwatstein@kcozlaw.com
Joseph Scott Carr (Ohio Bar No. 0098247)
scarr@kcozlaw.com
Matthew A. Keilson (*pro hac vice*)
mkeilson@kcozlaw.com
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
(404) 400-7300

*Counsel for Defendant Realgy, LLC*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing adheres to the page limitations set forth in Local Civil Rule 7.1(f) with respect to cases assigned to the complex track.

## CERTIFICATE OF SERVICE

I certify that today I filed the foregoing using the Court's CM/ECF system, which will automatically send a notice of electronic filing to all counsel of record.

Dated: August 4, 2020.

*/s/ Ryan D. Watstein*
Ryan D. Watstein (*pro hac vice*)
Georgia Bar No. 266019

*Counsel for Defendant Realgy, LLC*