UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ROBERTA LINDENBAUM**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**REALGY, LLC d/b/a REALGY ENERGY SERVICES**, a Connecticut limited liability company, and **JOHN DOE CORPORATIONS 1-10**,<br><br>*Defendants*. | Case No.: 1:19-cv-2862-PAG<br><br>JUDGE PATRICIA A. GAUGHAN |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT REALGY, LLC'S
MOTION TO DISMISS AMENDED COMPLAINT**

I. **INTRODUCTION**

Defendant Realgy, LLC's ("Realgy" or "Defendant") Motion to Dismiss the Amended Complaint ("Motion") may deserve points for originality, but it gets none for accuracy. In *Barr v. Am. Ass'n of Political Consultants, Inc*, 140 S. Ct. 2335 (2020) ("*AAPC*"), applying basic severability principles developed over the last 100 years, seven of the nine Supreme Court justices agreed that the 2015 "Government Debt Exemption" was severable from the remainder of the TCPA, concluding that "the entire 1991 robocall restriction should *not* be invalidated, but rather that the 2015 government-debt exception must be invalidated *and severed from the remainder of the statute*." *Id.* at 2343 (emphases added). In doing so, the Court was careful to avoid invalidating the remaining sections of the TCPA – including the automated-call ban, the very heart of the statute – acknowledging that "even after 2015, Congress has retained a very broad restriction on robocalls . . . [the] continuing robocall restriction proscribes *tens of millions* of would-be robocalls that would otherwise occur *every day*," and that "Congress's continuing broad prohibition of robocalls amply demonstrates Congress's continuing interest in consumer privacy." *Id.* at 2348 (emphases in original); *see also id.* at 2355 ("In short, the correct result in this case is to sever the 2015 government-debt exception and leave in place the longstanding robocall restriction").

To avoid any confusion on this point, Justice Kavanaugh, writing for the Court in a section joined, either directly or via concurrence, by six other justices, explained:

> As the Government acknowledges, although our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate. ***On the other side of the ledger, our decision today does not negate the***

> ***liability of parties who made robocalls covered by the robocall restriction.***

*Id.* at 2355, n. 12 (emphasis added) (internal citation omitted).

Defendant, as it did in its rejected motion to stay, asks this Court to reach the *opposite* conclusion, finding that the entire TCPA was invalid for five years (from 2015 to 2020) and that no one who made unsolicited robocalls during that period, like Defendant, can be held liable for them. There is <u>zero</u> basis for this reading in either the *AAPC* decision or the decades of Supreme Court jurisprudence undergirding it. Defendant's tortured analysis simply ignores the obvious import of the ruling while attempting to "get off on a technicality." But "[c]onstitutional litigation is not a game of gotcha against Congress, where litigants can ride a discrete constitutional flaw in a statute to take down the whole, otherwise constitutional statute." *AAPC* at 2351. Defendant's motion should be denied.

## II.     RELEVANT FACTS

Since its inception nearly 30 years ago, the TCPA has prohibited companies like Realgy from placing calls using an artificial or prerecorded voice ("prerecorded calls") when making calls to cellular telephones and residential landline telephones without first obtaining consent. Plaintiff's Amended Complaint ("Am. Compl.") ¶ 12. Realgy has violated, and continues to violate, the TCPA and its implementing regulations by placing, or having placed on its behalf, prerecorded calls to both cellular telephone subscribers and residential landline telephone subscribers (a) who have not expressly consented to receiving such calls and/or (b) who have expressly requested ***not*** to receive such calls. *Id.* ¶ 13. Consumer complaints about Realgy's invasive and repetitive calls are in fact legion. *Id.* ¶ 18. Because Realgy is an energy supply company, *none* of these calls have anything to do with government debt.

On November 26, 2019 Plaintiff received an unsolicited, prerecorded phone call on her cellular telephone from, or on behalf, of Realgy. The caller asked Plaintiff for her billing account number and confirmed that Realgy would be the energy supplier. Indeed, given the unusual nature of Realgy's name, Plaintiff asked the phone representative to repeat it. The representative repeated Realgy Energy's name and spelled it for Plaintiff. *Id.* ¶¶ 28-31. This solicitation call had nothing to do with government debt.

Then, on March 3, 2020, *after* she filed her initial Complaint in this action, Plaintiff received another unsolicited, pre-recorded phone call by or on behalf of Realgy, this time on her residential landline phone. *Id.* ¶ 32. This caller also attempted to sell Plaintiff Realgy's energy services and had nothing to do with government debt.

There is no question these allegations state a claim for relief against Realgy under the TCPA; indeed, Defendant has not moved to dismiss under Rule 12(b)(6). Instead, Defendant argues that it is not liable for these calls because the TCPA simply did not exist after 2015. Between the United States Supreme Court, United States Congress, legal scholars and commentators, and both the plaintiff and defense class action bars, Realgy seems to be the only one who believes this: for example, a review of more than two dozen client alerts, blog posts, and memos authored by various defense-oriented law firms (including some of the largest in the country), accurately noting the Supreme Court's holding in *AAPC,* shows that *none* of them think the TCPA was unconstitutional *in toto* for five years. *See* Declaration of Adam Savett, filed concurrently herewith. They are correct.

### III. ARGUMENT

#### A. The TCPA's General Prohibition of Robocalls Remained Valid and Enforceable at All Times

Defendant's argument is straightforward: because the Supreme Court ruled that the Government Debt Exemption was unconstitutional, and because that Exemption was part of the TCPA from 2015 until early-July 2020, the entire Act was unconstitutional during that time and, therefore, the TCPA-violative calls Defendant placed in 2019 and early 2020 are not legally actionable. *See generally* Motion. The argument is also wrong, replacing the Supreme Court's well-established law on severability with creative theorizing.

At its most basic level, severability is designed to remove an invalid portion of a statute without voiding any remaining valid portions. *See, e.g., Dorchy v. Kansas*, 264 U.S. 286, 289–290, 44 S.Ct. 323, 68 L.Ed. 686 (1924) ("A statute bad in part is not necessarily void in its entirety. Provisions within the legislative power may stand if separable from the bad"); *Loeb v. Columbia Township Trustees*, 179 U.S. 472, 490, 21 S.Ct. 174, 45 L.Ed. 280 (1900) ("one section of a statute may be repugnant to the Constitution without rendering the whole act void").

Justice Kavanaugh was indeed quite careful *not* to invalidate the TCPA's general ban on robocalls, pointing to Congress's and the American public's clear interest in restricting them. *AAPC* at 2356 (noting that the approach suggested in Justice Gorsuch's partial concurrence "of injunctive relief, plus *stare decisis*, would in effect allow all robocalls to cell phones—notwithstanding Congress's decisive choice to prohibit most robocalls to cell phones . . . . That approach would disrespect the democratic process, through which the people's representatives have made crystal clear that robocalls must be restricted [and] would end up harming a different and far larger set of strangers to this suit—the tens of millions of consumers who would be

4

bombarded every day with nonstop robocalls notwithstanding Congress's clear prohibition of those robocalls").

And, again, if this language did not express plainly enough that the Court had no intention of giving violators a five-year free pass for TCPA violations, Justice Kavanaugh explicitly states in Section III(B)(3) that "our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." *AAPC* at 2355 n. 12.

Few statements could better or more succinctly refute Realgy's entire argument, and so Realgy spends a section of its Motion offering reasons why the Court should ignore it, none of which is remotely convincing. Motion at 8-10. The statement appears in a section of the opinion on severability formally joined by three justices (Kavanaugh, Alito, and Roberts) and endorsed by four more in their respective concurrences. *See AAPC* at 2357 (Sotomayor Concurrence) ("I agree that the offending provision is severable"); 2363 (Breyer Concurrence, joined by Justices Ginsburg and Kagan) ("I agree with Justice Kavanaugh's conclusion that the provision is severable").

Second, contrary to what Defendant claims, holding that parties who made robocalls unrelated to the Government Debt Exemption should still be liable under the TCPA comports perfectly with long-standing precedent. For example, in *Eberle v. People of State of Michigan*, 232 U.S. 700, 34 S. Ct. 464 (1914), a Michigan "local option law" made it unlawful "to manufacture or sell malt, vinous, spirituous, or intoxicating liquors in any county where a majority of the electors vote in favor of prohibition." *Id.* at 702. Through amendments passed 10 and 13 years, respectively, after the original law, "it was further provided that the act should not be construed to 'prohibit the sale of wine or cider made from home-grown fruit in quantities of not less than 5 gallons, nor . . . to prohibit the manufacture of wine or cider, nor . . . to prohibit

the sale at wholesale of wine or cider manufactured in said [dry] county to parties who reside outside of said county.'" *Id.* at 703. Defendants, who had been prosecuted under the law for manufacturing beer, argued, *inter alia*, that their prosecution was unconstitutional on equal treatment grounds because of the amendment permitting the sale of wine and cider, *id.* at 703-04, the same reasoning Realgy uses to argue that it cannot be sued for patent TCPA violations because of the Government Debt Exemption. The Supreme Court flatly rejected the argument, holding that "[t]he original local option statute had been held to be constitutional, and prohibited, without discrimination, the manufacture of all liquors. That valid act the defendants violated, and their conviction cannot be set aside on the ground that some or all of the electors voted to make the law operative in Jackson county under the supposition that, as wine could be manufactured, the equal protection clause of the Constitution would make it likewise lawful to manufacture beer and other liquors." *Id.* at 706. Justice Kavanaugh's footnote simply illustrates this maxim: the violation of a validly enacted statute is not excused by the invalidity of an unrelated and severable provision. This is particularly true when the invalid provision is an amendment added years after the original law took force, as explained below in Section B.

    None of the authority Defendant cites contradicts this essential premise. Instead, the vast majority of the cases to which Defendant points, standing for the proposition that an unconstitutional law cannot be enforced, beg the very question: *was* the TCPA unconstitutional in its entirety while the Government Debt Exemption was in effect? The answer is no as *Eberle* and *AAPC* itself make clear, but Defendant's caselaw *presumes* the answer is yes, and is therefore not helpful. Motion at 8 ("These decisions unanimously recognize the fundamental unfairness of imposing penalties for violations of a statute that was concededly unconstitutional—and thus 'void'—when the alleged violations occurred"). The TCPA was *not*

void when the allegations occurred, only the Government Debt Exemption was, as the *AAPC* Court takes great pains to make explicit. *Id.* at 2355 ("In short, the correct result in this case is to sever the 2015 government-debt exception and *leave in place the longstanding robocall restriction*") (emphasis added).

Defendant's analogy to *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020) is misplaced. In *Seila,* the relevant constitutional question was whether the Consumer Financial Protection Bureau's ("CFPB") leadership by a single Director, who serves for a longer term than the President and cannot be removed by the President except for inefficiency, neglect, or malfeasance, violated separation of powers principles. *Id.* at 2191. The Court answered in the affirmative, concluding that "[t]he CFPB Director's insulation from removal by an accountable President is enough to render the agency's structure unconstitutional." *Id.* at 2204. Because the defendant had received a Civil Investigative Demand from a Director who was unconstitutionally insulated from removal at the time, that action might need to be ratified by a new Acting Director accountable to the President, a question the Court ultimately left for the lower court to address on remand. *Id.* at 2208 ("The Government counters that the demand, though initially issued by a Director unconstitutionally insulated from removal, can still be enforced on remand because it has since been ratified by an Acting Director accountable to the President. The parties dispute whether this alleged ratification in fact occurred and whether, if so, it is legally sufficient to cure the constitutional defect in the original demand. That debate turns on case-specific factual and legal questions not addressed below and not briefed here").

Defendant takes the ruling to mean that "[i]f the constitutionality of the statute posed no problems to the viability of acts taken by the CFPB while its structure was unconstitutional, then there would have been no need for the lower courts to determine the extent to which ratification

7

occurred and no need for the CFPB to ratify its own prior acts." Motion at 12. But the issue in *Seila Law* was whether acts taken *specifically by a Director deemed to be unconstitutionally appointed* would need to be ratified, not whether the CFPB as a whole was a constitutional entity (which the Court determined it was in severing the Director removal provisions specifically while upholding the remainder of the Dodd-Frank Act establishing it). The constitutional infirmity *itself* was the reason for the CFPB's ratification of the Director's prior acts; it was not, as in *AAPC*, a separate, severed amendment that had no connection to the underlying illegal acts themselves.

### B. The Severed Government Debt Exemption is an Invalid Amendatory Exception that Did Not Render the Entire TCPA Unconstitutional

Defendant's dubious position also ignores that the Government Debt Exemption was an amendatory exception first added to the TCPA 24 years after its inception. "The rule that the invalidity of a part of a statute does not extend to the whole statute unless the parts are interdependent is especially applicable to amendments and amendatory acts. Usually, when an amendatory exception to a statute proves unconstitutional, *the original statute stands wholly unaffected by it*." 16A Am. Jur. 2d Constitutional Law § 201 (emphasis added). In other words, when a statute is on the books and then, at some later time, Congress adds an amendment that is ultimately deemed unconstitutional, the amendment is treated as if it never occurred and the original statute remains in full force as if never altered by the nullity. As the *AAPC* Court itself explained:

> For example, in *Eberle v. Michigan*, the Court held that "discriminatory wine-and-cider amendments" added in 1899 and 1903 were severable from the underlying 1889 state law generally prohibiting the manufacture of alcohol. 232 U.S. 700, 704–705, 34 S.Ct. 464, 58 L.Ed. 803 (1914). In *Truax*, the Court ruled that a 1913 amendment prohibiting Arizona courts from issuing injunctions in labor disputes was invalid and severable from the underlying 1901

8

> law authorizing Arizona courts to issue injunctions generally. 257 U.S., at 341–342, 42 S.Ct. 124. In *Frost*, the Court concluded that a 1925 amendment exempting certain corporations from making a showing of "public necessity" in order to obtain a cotton gin license was invalid and severable from the 1915 law that required that showing. 278 U.S., at 525–528, 49 S.Ct. 235. Echoing *Marbury*, the Court in *Frost* explained that an unconstitutional statutory amendment "is a nullity" and "void" when enacted, and for that reason has no effect on the original statute. 278 U.S., at 526–527, 49 S.Ct. 235 (internal quotation marks omitted).

*AAPC* at 2353; *see also Frost v. Corp. Comm'n*, 278 U.S. 515, 526–27, 49 S. Ct. 235, 239, 73 L. Ed. 483 (1929) ("Here it is conceded that the statute, before the amendment, was entirely valid. When passed, it expressed the will of the Legislature which enacted it. Without an express repeal, a different Legislature undertook to create an exception, but, since that body sought to express its will by an amendment which, being unconstitutional, is a nullity and, therefore, powerless to work any change in the existing statute, that statute must stand as the only valid expression of the legislative intent").

This is the end of the inquiry: a century of unambiguous Supreme Court precedent holds that the TCPA has, at all times, been the constitutional "valid expression of the legislative intent" to prohibit harassing and invasive robocalls, with the severed Government Debt Exemption a "nullity" that was "void when enacted" rather than a get-out-of-jail-free card. *AAPC* at 2356 ("In 1991, Congress enacted a general restriction on robocalls to cell phones. In 2015, Congress carved out an exception that allowed robocalls made to collect government debt. In doing so, Congress favored debt-collection speech over plaintiffs' political speech. We hold that the 2015 government-debt exception added an unconstitutional exception to the law. We cure that constitutional violation by invalidating the 2015 government-debt exception and severing it from the remainder of the statute").

9

Dated: August 24, 2020                    Respectfully submitted,

**SAVETT LAW OFFICES, LLC**

By:   */s/ Adam T. Savett*
          Adam T. Savett

Adam T. Savett (VA73387)
adam@savettlaw.com
2764 Carole Lane
Allentown, PA 18104
Phone: (610) 621-4550
Fax: (610) 978-2970

Katrina Carroll
kcarroll@carlsonlynch.com
Kyle Shamberg
kshamberg@carlsonlynch.com
**CARLSON LYNCH LLP**
111 W. Washington Street
Suite 1240
Chicago, IL 60602
Phone: (312) 750-1265
Fax: (312) 483-1032

*Counsel for Plaintiff and the Putative Classes*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT REALGY, LLC'S MOTION TO DISMISS AMENDED COMPLAINT adheres to the page limitations set forth in Local Rule 7.1(f).

*/s/ Adam T. Savett*
Adam T. Savett

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 24, 2020, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, by which notification of such filing was electronically sent and served on all parties.

*/s/ Adam T. Savett*
Adam T. Savett
