UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ROBERTA LINDENBAUM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>REALGY, LLC d/b/a REALGY ENERGY SERVICES, a Connecticut limited liability company, and JOHN DOE CORPORATIONS 1–10,<br><br>Defendants. | Case No. 1:19-CV-02862-PAG<br><br>Judge Patricia A. Gaughan |

**REALGY, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | ARGUMENT | | 3 |
| | A. | *AAPC* Deemed One Statutory Section, not the entire TCPA, Unconstitutional from 2015 to July 6, 2020. | 3 |
| | B. | The Three-Justice Dicta in Footnote 12 of *AAPC* Does Not Change the Holding that Non-Government Speakers Cannot Be Discriminated Against. | 5 |
| | C. | *Eberle* does not Support Plaintiff's Position, and Plaintiff Offers No Other Rebuttal to Realgy's Cases Establishing that an Unconstitutional Speech Restriction is Unenforceable. | 7 |
| | D. | Realgy's Argument Correctly Interpreting *AAPC* Does Not Result in a Parade of Horribles. | 11 |
| | E. | Plaintiff's Misinterpretation of *AAPC* Would Lead to Absurd Results. | 12 |
| | F. | Plaintiff's Attempt to Distinguish *Seila Law* is Unavailing. | 13 |
| III. | CONCLUSION | | 14 |

**I.      INTRODUCTION**

Plaintiff's opposition employs hyperbole, obfuscation, and misdirection to distract the Court from the straightforward application of First Amendment principles. For example, Plaintiff claims (at 3) that Realgy is arguing "the TCPA simply did not exist after 2015" in an effort to make Realgy look extreme. But that statement is plainly false. Realgy explained (at 1) only that the very specific provision of the TCPA Plaintiff sues under was unconstitutional for a short period of time, before the Supreme Court fixed it though severance on a prospective basis on July 6, 2020.

Plaintiff employs these tactics in an attempt to avoid the express holding in *AAPC*, as well as the necessary result thereof: that the "robocall restriction with the government-debt exception" was unconstitutional and thus it could not be enforced from 2015 to July 6, 2020, when the Supreme Court severed it. 140 S. Ct. 2335, 2347 (2020).[1]

Because she cannot, Plaintiff does not challenge that this would be the result if the Supreme Court had held the robocall restriction itself was unconstitutional. Instead, Plaintiff obfuscates again, arguing that the Supreme Court did not actually hold that the *speech restriction* was unconstitutional, but only the exception added by Congress in 2015. Because of this, Plaintiff theorizes, severing the exception from the restriction cures the infirmity without impacting the enforceability of the restriction during the time the exception was in place.

Plaintiff is wrong, many times over. First, she ignores the express language of the opinion. As to the first of the two holdings that were joined by a majority, the Court made clear that the "question is ***whether the <u>robocall restriction</u>, with the government-debt exception***, is content-based. The answer is yes." *AAPC*, 140 S. Ct. at 2346 (emphasis added). Second, and relatedly,

---

[1]      To the extent there is any doubt regarding the holding of *AAPC* and the importance of the First Amendment principles implicated by this case, Realgy requests oral argument on this Motion.

the First Amendment bars laws "abridging the freedom of speech" (i.e., the restriction), not laws permitting speech (i.e., the exception). The exception could not be unconstitutional standing alone because it does not abridge speech. Thus, the ***restriction*** was unconstitutional for the period that it contained the exception, and the premise of Plaintiff's entire response is wrong.

Plaintiff also misinterprets the Court's second holding—that the constitutional infirmity could be cured by severing the exception on a prospective basis—to mean the speech restriction was enforceable even during the time it was unconstitutional. But as the Court recognized just a week before *AAPC* in *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2208-09 (2020), severance is a *prospective* remedy, and the Court did not address the enforceability of the restriction pre-severance in *AAPC*. Nor did it have occasion to because—as Plaintiff concedes—*AAPC* was a direct challenge, not a suit where a defendant was being accused of violating a speech restriction during the time it was unconstitutional.[2] That question is before this Court, and over two hundred years of First Amendment jurisprudence dictates that parties cannot be penalized under an unconstitutional speech restriction.

The examples Realgy spent pages addressing, which Plaintiff ignores because she has no response, best illustrate the necessity of this result: If Congress had passed an exception to the automated call ban of the TCPA to assist President Trump's reelection, and it was later held to be unconstitutional, disfavored speakers (such as a Democratic PAC) could not and would not be punished after the fact for having violated it. Any other result would be untenable, because it would mean that the party in power could always pass unconstitutional exceptions to speech

---

[2]  Plaintiff attaches to his Opposition a series of blog posts and internet articles. Plaintiff does not explain why these materials are relevant and/or authoritative other than to muse (at 3) that none of them support the proposition that "the TCPA was unconstitutional *in toto* for five years." As this is a distortion of Realgy's actual argument, these materials are irrelevant. Further, they only describe the fact that the Supreme Court chose to sever the statute to save it on a going-forward basis; that is all. Not one of them of states that the robocall restriction could be enforced during the time it was unconstitutional. Thus, they do not support Plaintiff's position or cut against Realgy's.

restrictions to benefit themselves or their causes for as long as it took for the Supreme Court to eventually invalidate them. This would fly in the face of the very purpose behind the First Amendment: to prevent government overreach favoring one speaker over another.

And while Plaintiff's arguments would lead to absurd results, Realgy's position does not. This is a case about two telephone calls that Realgy did not even place, and there are numerous other avenues for pursuing relief from such calls against the responsible party. For example, there are many other provisions of the TCPA available to parties who receive unwanted calls, including the do-not-call provisions, which allow a person to place their number on the national do-not-call registry and/or a company's internal do-not-call registry to avoid sales calls. *None* of these TCPA provisions were impacted by the ruling in *AAPC*. There is also the FTC's Telemarketing Sales Rule and dozens of state laws (including Ohio state laws) that contain remedies for unwanted telephone calls, *none* of which the Supreme Court ruled unconstitutional.

This action, however, is premised on purported violations of 47 U.S.C. § 227(b)(1)(A)(iii) that occurred before July 6, 2020, the date of the *AAPC* decision. Because that provision was unconstitutional at the time of the two calls at issue, Plaintiff's claim must be dismissed.

## II. ARGUMENT

### A. *AAPC* Deemed One Statutory Section, not the entire TCPA, Unconstitutional from 2015 to July 6, 2020.

From the outset, Plaintiff misinterprets *AAPC* and mischaracterizes Realgy's argument. *First*, Plaintiff states several times (*e.g.*, at 4 and 6) that Realgy is arguing that the entire TCPA was unconstitutional from 2015 to the date of the *AAPC* decision. That is wrong. As even a cursory review of Realgy's motion shows, Realgy explains only that a particular speech restriction, 47 U.S.C. § 227(b)(1)(A)(iii) (referred to by the Supreme Court and Realgy as the "automated-call

ban" or "robocall restriction"), was deemed unconstitutional. Plaintiff cannot argue that the Supreme Court did not so hold because the Court stated this point explicitly:

> The initial First Amendment question is whether the *robocall restriction*, with the government-debt exception, is content-based. The answer is yes. . . . The Government concedes that it cannot satisfy strict scrutiny to justify the government-debt exception. We agree.

*AAPC*, 140 S. Ct. at 2346 (emphasis added); 2347 ("In short, the *robocall restriction* with the government-debt exception is content-based.") (emphasis added).

*Second*, Plaintiff suggests (at 1) that the Supreme Court's preserving the TCPA by severing the government exception *prospectively* somehow has bearing on whether the speech restriction was enforceable during the time it was unconstitutional. It does not. The questions before the Court were "[w]hether the government-debt exception to the TCPA's automated-call restriction violates the First Amendment, and whether the proper remedy for any constitutional violation is to sever the exception from the remainder of the statute." Question Presented Report, *AAPC*, No. 19-631, https://www.supremecourt.gov/docket/docketfiles/html/qp/19-00631qp.pdf (last visited September 8, 2020). Plaintiff concedes that whether an unconstitutional provision of the statute could be enforced to penalize illegally disfavored speakers during the time it was unconstitutional was not presented, briefed, or argued to the Court, and thus that the Court did not rule on it. Indeed, the Supreme Court is "a court of review, not of first view," and it "ordinarily will not decide questions not raised or litigated in the lower courts[.]" *See McLane Co., Inc. v. E.E.O.C.*, 137 S. Ct. 1159, 1170 (2017) (internal quotations omitted); *see also City of Springfield, Mass. v. Kibbe*, 480 U.S. 257, 259 (1987).

Because Plaintiff concedes this point, as she must, the result here is dictated by the well-settled principle that a federal court has no jurisdiction over a claim based on an unconstitutional law, and particularly not to impose liability in a discriminatory manner under the First

4

Amendment. *E.g.*, *Ex parte Siebold*, 100 U.S. 371, 377 (1880); *Grayned v. City of Rockford*, 408 U.S. 104, 107 n.2 (1972) (noting, in a constitutional challenge to a content-based speech restriction, that courts "must consider the facial constitutionality of the ordinance in effect when [the defendant] was arrested and convicted."); *see also Montgomery v. Louisiana*, 136 S. Ct. 718, 724 (2016) (sentence under unconstitutional law void because state deprived of authority to impose it); *Baucum v. United States*, 80 F.3d 539, 540-41 (D.C. Cir. 1996) ("[O]nce a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)[.]");

### B. The Three-Justice Dicta in Footnote 12 of *AAPC* Does Not Change the Holding that Non-Government Speakers Cannot Be Discriminated Against.

Plaintiff attempts to argue otherwise by pointing to the last sentence of Footnote 12, wherein Justice Kavanaugh, speaking for two other Justices states: "[o]n the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." *AAPC*, 140 S. Ct. at 2355, n.12. As Realgy explained in its moving papers, however, this footnote clearly refers only to past *judgments*, meaning that the plurality did not intend to negate or undo liability against parties that has already been adjudicated. This accords with prior Supreme Court precedent that recognizes "a distinction between the application of a change in the law that takes place while a case is on direct review on the one hand, and its effect on a final judgment under collateral attack, on the other hand." *See Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 710-711 (1974). It is also the only way to read the footnote consistent with *Seila Law*, other Supreme Court precedent, First Amendment principles, and plain logic. *See* 140 S. Ct. at 2208-09. Plaintiff fails to respond to any of these points, even though Realgy spent several pages (8-10) addressing them. Thus, Plaintiff concedes Realgy is correct, ending the

inquiry. *See Hicks v. Concorde Career Coll.*, 449 Fed. Appx. 484, 487 (6th Cir. 2011) (district court properly concluded plaintiff conceded argument by failing to respond to it).

In fact, the only argument about footnote 12 that Plaintiff responds to is Realgy's alternative point that, even if Realgy's interpretation of the last sentence of that footnote were incorrect, it is non-binding passing dicta of three Justices. Plaintiff responds to this point by stating (at 5) that this footnote was "endorsed by four more [justices] in their respective concurrences." But this is plainly false, as evidenced simply by reading Plaintiff's own parenthetical citations. Justice Sotomayer concurred only in the *judgment*. *AAPC*, 140 S. Ct. at 2356. Plaintiff points out that she agreed "that the offending provision is severable." *Id*. But her agreement that the exception is severable does not amount to the conclusion that the unconstitutional speech provision is enforceable pre-severance. This is a non sequitur. Similarly, the concurrence of Justices Breyer, Ginsburg, and Kagan "with respect to severability" offers no support for Justice Kavanaugh's vague statement, which is unaddressed in either of the concurrences. *See id*. at 2363; *Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds[.]" (internal quotations omitted)); *In re Cook*, 322 B.R. 336, 342 (N.D. Ohio 2005) ("If no common denominator in the Court's legal reasoning can be discerned, the plurality does not carry the weight of the Supreme Court.").

Accordingly, the speech restriction is unenforceable pre-severance. *See, e.g.*, *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1699 n.24 (2017) (noting in a majority opinion that a "defendant convicted under a law classifying on an impermissible basis may assail his conviction without regard to the manner in which the legislature might subsequently cure the infirmity");

6

*United States v. Stroke*, No. 1:14-CR-45S, 2017 WL 2643666, at *2 (W.D.N.Y. June 20, 2017) ("probable cause cannot rest on a statute that was unconstitutional at the time of an alleged incident"); *see also Arthrex, Inc. v. Smith & Nephew, Inc.*, 953 F.3d 760, 767 n. 2 (Mem) (D.C. Cir. 2020) (denial of petition for *en banc* review) ("judicial severance of one portion of an unconstitutional statute is, by necessity, only applicable prospectively") (O'Malley, J. concurring).

      C.    *Eberle* **does not Support Plaintiff's Position, and Plaintiff Offers No Other Rebuttal to Realgy's Cases Establishing that an Unconstitutional Speech Restriction is Unenforceable.**

Plaintiff next cites (at 8) to *Eberle v. People of the State of Michigan*, 232 U.S. 700 (1914) for the proposition that the "severed government debt exception is an invalid amendatory exception that did not render the entire TCPA unconstitutional." To start, and as noted above, Realgy never argued that *AAPC* rendered the entire TCPA unconstitutional, but rather only the automated call ban (47 U.S.C. § 227(b)(1)(A)(iii)), and only from November 2, 2015, to July 6, 2020, when it contained the government exception. That was the Court's explicit holding.

Given Plaintiff's repeated mischaracterizations of Realgy's points, it is unsurprising that *Eberle*, which was not even a First Amendment case, has no relevance here. In *Eberle*, the Supreme Court addressed a challenge to convictions under an 1889 Michigan law that made it illegal to manufacture or sell liquor if a majority of the local electorate voted for prohibition. 232 U.S. at 702. Michigan passed two amendments to the law later in 1899 and 1903 permitting the sale of wine and cider under certain circumstances "to parties who reside outside of said county." *Id*. at 703. The law became operative in the subject county in 1909 after an election, after which the defendants were convicted for manufacturing beer. *Id*. at 703-704.

The Supreme Court of Michigan upheld the convictions but voided the 1899 and 1903 amendments on the basis that permitting the sale of liquor outside of the county was an "encroachment" upon the Commerce Clause. *People v. Eberle*, 167 Mich. 477, 487 (1911). The

7

question, as framed by the Michigan Supreme Court, was "not whether a state may not lawfully prohibit or regulate the manufacture or sale of spirituous and intoxicating … products … but whether a state … may discriminate against the products and citizens of other states."  *Id*.  The defendants challenged the convictions again to the United States Supreme Court, arguing that "the election adopting the amendments was void" because the voters adopted the prohibition law with the amendments.  *Eberle*, 232 U.S. at 705.  The Supreme Court upheld the convictions, reasoning that the propriety of the election was a question to be determined by the Michigan Supreme Court and that court had determined that the amendments were "mere nullities" that had no impact on the propriety of the underlying law.  *Id*. at 703-705.

*Eberle* has no bearing on this case, for at least four reasons.  *First*, the holding in *Eberle* by the Michigan Supreme Court (but not the U.S. Supreme Court) was that the amendments to the law were "nullities" from the outset that had no impact on the constitutionality of the underlying law as a whole.  *Id.*  This is in stark contrast to *AAPC*, in which the U.S. Supreme Court held that a specific and long-standing speech ***restriction*** (47 U.S.C. § 227(b)(1)(A)(iii)) was rendered unconstitutional by the addition of the government ***exception***, as explained above.  140 S. Ct. at 2346-47.  Put another way, the amendment in *Eberle* involved an unconstitutional amendment that was void from the outset under the Commerce Clause, as determined by the state court.  It did ***not*** involve the fact pattern before the Supreme Court in *AAPC*, in which an exception to a speech restriction rendered the restriction unconstitutional during the time the exception was in place.

Indeed, the Supreme Court did not hold in *AAPC* that the ***government exception*** was a legal nullity that had no impact on the law; it held that the "***restriction*** with the government-debt exception is content-based," did not pass strict scrutiny, and was thus unconstitutional.  140 S. Ct. at 2347 (emphasis added).  Plaintiff's argument otherwise is self-defeating because, if the

8

government exception was in fact a legal nullity that was void on its face when it was enacted, then government debt collectors could also be penalized under the statute for the entire 2015-2020 timeframe. That would obviously not comport with due process (given the government speakers reasonably believed their conduct was legal) and thus the Supreme Court made clear that outcome was precluded by its decision in *AAPC*: "although our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case." *AAPC*, 140 S. Ct. at 2355, n.12. Thus, for the First Amendment's prohibition against content discrimination to make sense, it requires that the unconstitutional speech restriction was unenforceable prior to severance of the government exception, both against government speakers and everyone else.

*Second*, the Supreme Court determined in *Eberle* that whether the underlying law was constitutional was an issue properly decided by the state court because "it was for the state court to determine [the regularity of the adoption of the law], and to decide whether the election was void[.]" 232 U.S. at 705. Notably, the constitutional challenge went to "the regularity of the adoption than to the constitutionality of the statute after it had been adopted for Jackson County." *Id.* Thus, the Supreme Court did not decide whether the underlying law was unconstitutional, nor did it address the Michigan Supreme Court's holding that the underlying law violated the Commerce Clause. *See id.* at 703-707; *People v. Eberle*, 167 Mich. at 487. Accordingly, the Supreme Court did not address the question presented to the Court here: whether a defendant can be liable for violating a provision of a statute that the Supreme Court has held is unconstitutional.

*Third*, *Eberle* was not a First Amendment case, which involves unique concerns and a unique analysis demonstrated by the several hypotheticals discussed above and below. 232 U.S.

9

at 705.  Accordingly, the Supreme Court in *Eberle* did not address the special federal constitutional concerns regarding viewpoint and content discrimination implicated by the First Amendment and relied upon in *AAPC*.  As explained in the moving papers, prior Supreme Court precedent—entirely unaddressed by Plaintiff—establishes that an unconstitutional speech restriction is unenforceable, as judged at the time of the alleged violation.  *E.g.*, *Grayned*, 408 U.S. at 107 n.2 (noting, in a constitutional challenge to a content-based speech restriction, that courts "must consider the facial constitutionality of the ordinance in effect when [the defendant] was arrested and convicted.").[3]  Plaintiff has not cited a single case involving the fact pattern before the Court here, in which a speech restriction is rendered unconstitutional by its exception, nor has Plaintiff even cited a single First Amendment case.

*Fourth*, Plaintiff suggests (at 8-9) that the Supreme Court in *AAPC* cites *Eberle* to support the position that the speech restriction would still be enforceable pre-severance.  But that is also incorrect.  The Supreme Court cites *Eberle* in *AAPC* only for the point that it is constitutionally permissible to sever the government debt exception without striking down the entire statute.  140 S. Ct. at 2353 ("The Court's precedents further support severing the 2015 government-debt exception.").  Realgy is not arguing that the severance was improper or ineffective such that the constitutional infirmity has not been cured *prospectively*; rather, Realgy contends that the portion of the statute the Court determined to be unconstitutional (the speech restriction combined with the government debt-exception) is unenforceable pre-severance based on long-standing Supreme

---

[3]  It is worth noting that *Eberle* is a 100+ year old case addressing a state prohibition law in the context of the Commerce Clause.  First Amendment and constitutional jurisprudence, not even touched on in *Eberle*, has largely developed since then.

10

Court precedent. *See Siebold*, 100 U.S. at 377; *see also Montgomery*, 136 S. Ct. at 724. *Eberle* does not challenge this conclusion and Plaintiff has not cited a single case that does.[4]

### D. Realgy's Argument Correctly Interpreting *AAPC* Does Not Result in a Parade of Horribles.

Contrary to Plaintiff's distorted assertions that Realgy seeks to invalidate the entire TCPA so that the robocalls can be made with impunity (*see* pp. 2-3), Realgy argues that only a small piece of the TCPA (the automated-call ban of 47 U.S.C. § 227(b)(1)(A)(iii)) was unconstitutional and thus unenforceable for a narrow window of time (November 2, 2015, to July 6, 2020). This argument is based on well-settled First Amendment principles and the clear holding of *AAPC*. Thus, it would be irrelevant to the outcome of this Motion if it did necessitate a drastic change regarding TCPA claims, because the First Amendment trumps a law regulating phone calls.

But Realgy's Motion does not usher any drastic change. Under *AAPC*, Plaintiff and all other recipients of alleged unwanted calls would still be permitted to seek relief under various other provisions of the TCPA, which were entirely unaffected by the *AAPC* decision, as well as numerous other federal and state laws. *See, e.g.*, 47 C.F.R. § 64.1200(c) (prohibiting telephone solicitation to subscribers on the Do Not Call Registry); 16 C.F.R. § 310.4(b)(1)(iii)(A) (the Telemarketing Sales Rule); Ohio Rev. Code § 4719.01 *et seq*. (Ohio Telephone Solicitation Sales Act); Ohio Rev. Code § 1345.01 *et seq*. (Ohio Consumer Sales Practice Act).[5] Likewise, Plaintiff

---

[4] Plaintiff, without discussion, also cites *Frost v. Corp. Comm'n*, 278 U.S. 515, 525-528 (1929). In *Frost*, the Supreme Court held that an amendment exempting certain corporations from making a showing of "public necessity" in order to obtain a cotton gin license was invalid and severable from the earlier enacted law that required that showing. *Id*. *Frost* is similarly distinguishable from *AAPC* because the amendment itself was deemed to be unconstitutional and void, unlike in *AAPC*, where it the government exception rendered the robocall restriction itself unconstitutional. In addition, unlike *AAPC*, *Frost* did not involve the only question before this Court: penalizing a speaker for allegedly violating a speech restriction held to be unconstitutional under the First Amendment.

[5] Realgy raises the argument regarding *AAPC* not as a "get out of jail free" card, as Plaintiff hyperbolically states, but because it involves a threshold question of the Court's subject matter jurisdiction over Plaintiff's claim. Though Realgy would prevail at summary judgment because neither it nor anyone affiliated with it made the two calls at issue, this case cannot go that far because 47 U.S.C. § 227(b)(1)(A)(iii) was unconstitutional during the time in question.

11

could still pursue a claim under 47 U.S.C. § 227(b)(1)(A)(iii) for any calls that took place after July 6, 2020.  Thus, the constitutionally-required result in this case would not lead to a parade of horribles as Plaintiff wrongly contends.

### E. Plaintiff's Misinterpretation of *AAPC* Would Lead to Absurd Results.

On the other hand, Plaintiff's misinterpretation of *AAPC* would lead to absurd results, rendering the First Amendment meaningless.  As Realgy noted in its moving papers (to which Plaintiff offers no retort), the strict scrutiny standard applied by the Supreme Court in *AAPC* would apply to viewpoint discrimination, meaning the analysis and result in *AAPC* would have been the same if the exception had favored a particular political party, race, or ethnic group.  *See AAPC*, 140 S. Ct. at 2347 ("[T]he robocall restriction with the government-debt exception is content-based.  Under the Court's precedents, a law that is content based is subject to strict scrutiny.").  This point is crucial to understanding why Realgy cannot be penalized for violating a speech restriction while the favored speakers (those calling on behalf of the government) are excused.

The following are examples of the absurd and dangerous results from a holding otherwise:

- Congress could pass another exception to the TCPA permitting petroleum companies to make calls that were prohibited for everyone else (including disfavored green energy companies).  After the Supreme Court severed this exception, the non-favored energy companies could still be penalized for violating the pre-severance statute while the favored oil and gas companies were excused up until the point of the severance.

- Congress could pass another exception to the TCPA permitting public employee unions to make calls endorsing their preferred candidates for public office.  After the Supreme Court severed this exception, then the non-favored speakers such as non-union employees (and anyone other than a public employee union calling to endorse a candidate) could be penalized for violating the pre-severance statute while the favored public employee unions were excused up until the point of the severance for their political calls.

- Mortgage servicers could face billions in liability (in excess of their market caps) for placing collection calls regarding private mortgage debts from November 2, 2015 through July 5, 2020.  For the same calls, a student loan servicer making the same type of calls to collect student loan debts backed by the United States would face no liability whatsoever— a direct and flagrant First Amendment violation.

- Along the same lines, Plaintiff could have brought this suit against Realgy and a government debt collector, claiming they both annoyed and harassed her with two calls each in 2019, using the same dialing platform and the same script. By Plaintiff's logic, the claim against the debt collector would fail but the claim against Realgy would be permitted.

These results, which would be the required results if Plaintiff's argument is accepted, are simply not tenable, and they are not the law. *See Baucum*, 80 F.3d at 540-41 ("It is true that once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)[.]"). Indeed, "[i]t is a fundamental precept of the First Amendment that the government cannot favor the rights of one private speaker over those of another." *Bible Believers v. Wayne County Mich.*, 805 F.3d 228, 247 (6th Cir. 2015). Thus, the First Amendment simply does not permit the government to engage in the type of content discrimination fostered by allowing the government speakers to violate the speech restriction while penalizing Realgy and everyone else. *See id.* at 248 ("content-based restrictions on constitutionally protected speech are anathema to the First Amendment and are deemed "'presumptively invalid.'" (quoting *Ysura v. Pocatello Educ. Ass'n*, 555 U.S. 353, 358 (2009))).

### F. Plaintiff's Attempt to Distinguish *Seila Law* is Unavailing.

As Realgy explained in its moving papers, the Supreme Court's decision in *Seila Law* a week before *AAPC* also recognized the long-standing principle that unconstitutional laws are unenforceable during the time they are unconstitutional, even if later cured prospectively through severance, further mandating that Realgy's motion be granted. 140 S. Ct. at 2208-09. Plaintiff attempts to distinguish *Seila Law* by arguing (at 8) that "[t]he constitutional infirmity *itself* was the reason for the CFPB's ratification of the Director's prior acts; it was not, as in *AAPC*, a separate, severed amendment that had no connection to the underlying illegal acts themselves."

13

This argument does not withstand even minimal scrutiny. *First*, Plaintiff refers to the amendment (the government exception) as "separate" and severed" but it was neither during the time for which Plaintiff is seeking to hold Realgy liable. Indeed, up until July 6, 2020 (when *AAPC* was decided) the government exception was part of the speech restriction, rendering the restriction unconstitutional, as the Supreme Court held in *AAPC*. *Second*, Plaintiff is again wrong that the "amendment had no connection to the underlying illegal acts." Whereas Realgy is being sued for the alleged violations pre-severance, certain favored government-affiliated speakers who made the exact same type of calls during the exact same period of time are being given an unqualified free pass. Penalizing Realgy under these circumstances would vitiate the holding of *AAPC* and lead to the absurd and dangerous consequences outlined *supra* in Section II.E.

*Third*, and contrary to Plaintiff's assertion, the constitutional defect in *AAPC* was far more severe than in *Seila Law*, where the nature of the constitutional defect was *substantive* and unfixable. In *Seila Law*, the underlying infirmity was procedural only: the CFPB's leadership structure violated the separation of powers. Thus, all actions that took place while the removal provision was in place were invalid *unless* ratified by a constitutionally-appointed director. 140 S. Ct. at 2208-09. In *AAPC*, on the other hand, the constitutional infirmity was a First Amendment violation that had been in effect for over four years. 140 S. Ct. at 2346. The damage—illegal favoritism of government speakers—has already occurred. Because it is impossible to ratify such a substantive violation, that provision simply cannot be enforced for the 4 years it was unconstitutional. Plaintiff does not even attempt to address these problems because he cannot, and her failure to do so confirms Realgy's motion must be granted.

## III. CONCLUSION

*AAPC* and the First Amendment stand for the proposition that the government cannot punish some speakers while giving others a free pass. The reasons why are obvious when

14

considering the concrete examples discussed in the moving papers and in this Reply, all of which Plaintiff entirely ignores.  It follows that Realgy cannot be penalized for allegedly making calls pre-severance in violation of an unconstitutional speech restriction, when certain government and government-affiliated speakers were excused.  For the reasons set forth above, the Court should grant this motion and dismiss this case.

Dated: September 8, 2020.

Respectfully submitted,

**KABAT CHAPMAN & OZMER LLP**

*/s/ Ryan D. Watstein*
Ryan D. Watstein (*pro hac vice*)
rwatstein@kcozlaw.com
Joseph Scott Carr (Ohio Bar No. 0098247)
scarr@kcozlaw.com
Matthew A. Keilson (*pro hac vice*)
mkeilson@kcozlaw.com
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
(404) 400-7300

*Counsel for Defendant Realgy, LLC*

15

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing adheres to the page limitations set forth in Local Civil Rule 7.1(f) with respect to cases assigned to the complex track.

## CERTIFICATE OF SERVICE

I certify that today I filed the foregoing using the Court's CM/ECF system, which will automatically send a notice of electronic filing to all counsel of record.

Dated:  September 8, 2020.

                                                */s/ Ryan D. Watstein*
                                                Ryan D. Watstein (*pro hac vice*)
                                                Georgia Bar No. 266019

                                                *Counsel for Defendant Realgy, LLC*