UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Roberta Lidenbaum,** | ) | **CASE NO. 1:19 CV 2862** |
| *on behalf of herself and others* | ) | |
| *similarly situated*, | ) | |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **Realgy, LLC** *et al.*, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

**INTRODUCTION**

This matter is before the Court upon Realgy, LLC's Motion to Dismiss Amended Complaint (Doc. 20). This is a class action arising under the Telephone Consumer Protection Act ("TCPA"). For the reasons that follow, the motion is GRANTED.

**FACTS**

Plaintiff, Roberta Lindenbaum, brings this class action lawsuit against defendant Realgy, LLC and ten John Doe corporations alleging violations of the TCPA. According to the complaint, defendant placed a pre-recorded call to plaintiff's cellular telephone. After the filing

1

of this lawsuit, defendant placed a second pre-recorded call, this time to plaintiff's landline. Plaintiff never provided express written consent to receive these calls.  Plaintiff alleges that defendant violated 47 U.S.C. § 227.

During the pendency of this lawsuit, the Supreme Court decided *Barr v. American Association of Political Consultants, Inc.*, 140 S.Ct. 2335 (2020)("*AAPC*").  *AAPC* addressed the constitutionality of 47 U.S.C. § 227(b)(1)(A)(iii).  This Court stayed this action until the Supreme Court issued *AAPC*.  After its issuance, plaintiff filed a motion to lift the stay, which the Court granted.  In *AAPC*, the Supreme Court held that 47 U.S.C. § 227(b)(1)(A)(iii) violated the Constitution, but that severance of part of the offending part of the statute cured the constitutional infirmity.  Defendant now moves to dismiss the case for lack of subject matter jurisdiction on the basis that this Court lacks jurisdiction to preside over cases involving laws that are "unconstitutional and void."  Plaintiff opposes the motion.

**STANDARD OF REVIEW**

When a court's subject matter jurisdiction is challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the party seeking to invoke jurisdiction bears the burden of proof. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Rogers v. Stratton*, 798 F.2d 913, 915 (6th Cir. 1986).  This burden is not onerous. *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996).  The party need only show that the complaint alleges a substantial claim under federal law. *Id*.

A 12(b)(1) motion to dismiss may constitute either a facial attack or a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  Facial attacks question the sufficiency of the jurisdictional allegations in the complaint. *Id*.  Thus, those allegations must be taken as

2

true and construed in the light most favorable to the nonmoving party. *Id*. Factual attacks, however, challenge the actual fact of the court's jurisdiction. *Id*. In such cases, the truthfulness of the complaint is not presumed. *McGee v. East Ohio Gas Co.*, 111 F.2d 979, 982 (S.D. Ohio 2000) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320 (6th Cir. 1990)). Instead, the Court may weigh any evidence properly before it. *Morrison v. Circuit City Stores, Inc.*, 70 F.Supp.2d 815, 819 (S.D. Ohio 1999) (citing *Ohio Nat'l*, 922 F.2d 320; *Rogers*, 798 F.2d 913).

When presented with a facial attack, the non-moving party "can survive the motion by showing any arguable basis in law for the claim made." *Musson Theatrical*, 89 F.3d at 1248. Thus, such a motion will be granted only if, taking as true all facts alleged in the complaint, the Court is without subject matter jurisdiction to hear the claim. *Matteson v. Ohio State University*, 2000 WL 1456988 *3 (S.D. Ohio Sept. 27, 2000).

**ANALYSIS**

In *AAPC*, the Court addressed the constitutionality of 47 U.S.C. § 227(b)(1)(A)(iii). That provision as originally enacted in 1991, "prohibited almost all robocalls to cell phones." *AAP*C, 140 S.Ct. at 2344. In 2015, Congress amended the provision, as follows:

(a) IN GENERAL– Section 227(b) of the Communications Act of 1934...is amended--

    (1) in paragraph (1)--

    (A) in subparagraph (A)(iii), by inserting 'unless such call is made solely to collect a debt owed to or guaranteed by the United States' after 'charged for the call.'

The effect of this "government-debt" exception is to allow government debt collectors to place robocalls.

The plaintiffs in *AAPC* consisted of various organizations that participate in the political

3

system and desired to make robocalls in support of their political issues. Plaintiffs sought an injunction prohibiting enforcement of Section 227(b)(1)(A)(iii) on the grounds that it is an unconstitutional content-based restriction that favors certain speech over other speech. The district court determined that the statute indeed contained a content-based restriction to which strict scrutiny must be applied. The district court went on to decide that the statute as written survived strict scrutiny. On appeal, the Fourth Circuit recognized that plaintiffs mounted a facial challenge and agreed with the district court that the provision as drafted is an unconstitutional content-based restriction requiring the application of strict scrutiny. The circuit court disagreed, however, that the government satisfied this exacting standard. The court conducted a severability analysis and determined that severance of the government-debt exception comported with congressional intent. Absent the government-debt exception, the remainder of the provision passes constitutional muster.

The government appealed to the Supreme Court. In a deeply fractured plurality opinion, the Supreme Court determined that the provision containing the government-debt exception is a content-based restriction. Because at least five Justices agreed that the statute failed either strict or intermediate scrutiny, the Court upheld the judgment of the Fourth Circuit.

The Supreme Court next turned to severance. Although plaintiffs did not request severance, the Supreme Court nonetheless proceeded to analyze whether severance of the offending provision of the statute would be proper. Two Justices joined Justice Kavanaugh's plurality opinion, concluding that severance of the government-debt exception is proper. Four additional Justices concurred in the judgment. Justice Gorsuch dissented and Justice Thomas joined in the dissent on the basis that severance is not proper in the context of the case.

Defendant argues that, although the Supreme Court severed the unconstitutional portion of the statute, severance can only be applied prospectively. According to defendant, the statute is enforceable for robocalls made from 1991-2015, *i.e.*, the time period prior to the enactment of the government-debt exception, as well as for calls made after the date of the final judgment in *AAPC*. But for robocalls made from 2015 through entry of final judgment in *AAPC*, the statute remains unconstitutional on its face and cannot be enforced against *any* robocaller, including defendant. It appears that defendant makes this argument only with respect to cases currently pending. Defendant concedes that the analysis is different for cases that proceeded through final judgment prior to the Supreme Court's pronouncement in *AAPC*.

Plaintiff disputes defendant's argument. According to plaintiff, language in the plurality opinion supports the conclusion that severance of the government-debt exception applies retroactively to all currently pending cases. Plaintiff argues that the entire point of severance is to invalidate only a portion of a statute, not invalidate a statute in its entirety–even if only for a period of time. Plaintiff further notes that *AAPC* relies on other Supreme Court cases establishing this proposition.

Upon review, the Court agrees with defendant that severance of the government-debt exception applies only prospectively. *AAPC* sets forth the general law regarding severance:

> The Court's cases have instead developed a strong presumption in favor of severability. The Court presumes that an unconstitutional provision in a law is severable from the remainder of the law or statute. Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem, severing any problematic portions while leaving the remainder intact.

*AAPC*, 140 S.Ct. at 2350 (internal citations and quotations omitted).

> The Court's presumption of severability supplies a workable solution–one that allows courts to avoid judicial policymaking or *de facto* judicial legislation in determining just

5

> how much of the remainder of a statute should be invalidated. The presumption also reflects the confined role of the Judiciary in our system of separated powers–stated otherwise, the presumption manifests the judiciary's respect for Congress's legislative role by keeping courts from unnecessarily disturbing a law apart from invalidating the provision that is unconstitutional.... Those and other considerations, taken together, have steered the Court to a presumption of severability. Applying the presumption, the Court invalidates and severs unconstitutional provisions from the remainder of the law rather than razing whole statutes of Acts of Congress.

*Id*. at 2351.

"Before severing a provision and leaving the remainder of the law intact, the Court must determine that the remainder of the statute is capable of functioning independently and thus would be fully operative as a law." *Id*. (Internal citations and quotations omitted). Because the statute is capable of functioning independently of the government-debt exception, the unconstitutional clause may be severed from the remainder of the provision.

The plurality opinion noted, however, that the case before it "is an equal-treatment case, and equal-treatment cases can sometimes pose complicated severability questions." *Id*. at 2354. In First Amendment equal treatment cases, "a court theoretically can cure the unequal treatment either by extending the benefits or burdens to the exempted class, or by nullifying the benefits or burdens for all." *Id*. The plurality opinion notes that:

> To be sure, some equal-protection cases can raise complex questions about whether it is appropriate to extend benefits or burdens, rather than nullifying the benefits or burdens. For example, there can be due process, fair notice, or other independent constitutional barriers to extension of benefits or burdens. There also can be knotty questions about what is the exception and what is the rule. But here, we need not tackle all of the possible hypothetical applications of severability doctrine in equal treatment cases. The government-debt exception to the broad robocall restriction is a relatively narrow exception to the broad robocall restriction, and severing the government-debt exception does not raise any other constitutional problems.

*Id*. at 2354-55.

The parties in *AAPC* offered opposite solutions to the constitutionality problem facing the

6

Supreme Court.  Plaintiff sought an injunction preventing enforcement of the provision, thereby allowing political speech.  This would have cured any unequal treatment concern because it would have allowed essentially all speech.  On the other hand, the government argued that severance of the government-debt exception cures the unequal treatment because, in essence, it prevents all speech thereby eliminating any content-based restriction.  The Supreme Court took the uncommon (although not unprecedented) step of extending burdens rather benefits.  It cured the unequal treatment concern by *preventing* parties from engaging in speech.

The Supreme Court did not directly address the effect of severance on currently pending cases.  In other words, it is undisputed that prior to the amendment in 2015 and after the issuance of a final judgment in *AAPC*, defendant could not have made the robocalls at issue in this case.  Severance of the government-debt exception restored the statute to its pre-amendment constitutional standing.  But, according to defendant, at the time it allegedly made the robocalls, the statute was facially invalid and cannot be enforced.  This issue was not before the Supreme Court.  In a footnote, however, the plurality opinion provides:

> As the government acknowledges, although our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before entry of final judgment by the District Court on remand in this case, or such other date that the lower courts determine is appropriate.  On the other side of the ledger, our decision today does not negate liability of parties who made robocalls covered by the robocall restriction.

*Id*. at n.12.

The dissent seemingly acknowledges that the plurality suggests that severance of the government-debt exception might apply retroactively to pending cases.  The dissent first notes that plaintiffs did not seek severance of the exception and it was not "clear the plaintiffs would

7

even have standing to challenge the government-debt exception." *Id*. at 2366. Rather, plaintiffs sought the right to speak and obtained no relief in that regard. Moreover, "the analogy to equal protection doctrine" does not solve the problem. Rather "somehow, in the name of vindicating the First Amendment, our remedial course today leads to the unlikely result that not a single person will be allowed to speak more freely and, instead, more speech will be banned." *Id*. at 2366. The dissent then notes:

> In an effort to mitigate at least some of these problems, the [plurality] opinion suggests that the ban on government-debt collection calls announced today might be applied only prospectively. But prospective decisionmaking has never been easy to square with judicial power. And a holding that shields only government-debt collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate.

*Id*.

The Court agrees with defendant that *AAPC* did not address whether severance of the government-debt exception applies retroactively to cases currently pending. In addition, footnote 12 is contained in a pluarity opinion endorsed by only three Justices. Therefore, the Court finds that footnote 12 constitutes non-binding *obitur dictum*. Although non-binding, this Court always strives to give serious consideration of, and persuasive effect to, *obitur dictum* set forth in Supreme Court Opinions. That said, this Court agrees with the characterization of footnote 12 set forth in the recent decision *Creasy v. Charter Communications, Inc.*, 2020 WL 5761117 (E.D. La. Sept. 28, 2020). *Creasy* characterized footnote 12 as "passing Supreme Court *dicta* of no precedential force."

Absent footnote 12, the Court finds little, if any, support for the conclusion that severance of the government-debt exception should be applied retroactively so as to erase the existence of the exception. Although not addressed by the parties, the Court first turns to the

8

Supreme Court's pronouncement in *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86 (1993). *Harper* addressed whether a Supreme Court decision holding certain taxes unconstitutional should be applied to cases pending before the decision issued. *Harper* held:

> When this Court applies a new rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule. This rule extends *Griffith*'s ban against selective application of new rules.... Our approach to retroactivity heeds the admonition that the Court has no more constitutional authority in civil cases than criminal cases to disregard current law or to treat similarly situated litigants differently.

*Harper*, 509 U.S. at 97.

Although the rule in *Harper* is well-settled, a recent concurring opinion concluded that the rule does not apply when a court severs an unconstitutional provision of a statute. In *Arthrex, Inc. v. Smith & Nephew, Inc.*, 953 F.3d 760 (Fed. Cir. 2019), the Federal Circuit addressed a request for rehearing *en banc*. The court previously ruled that a statute directed at the appointment of administrative patent judges violated the Constitution's Appointments Clause. *Arthrex, Inc., v. Smith & Nephew, Inc.*, 941 F.3d 1320 (Fed. Cir. 2019). The court severed the provision directed at the removal of the administrative patent judges, thereby rendering the statute constitutional. *Id*. The court then remanded the case for a new administrative hearing. *Id*.

In an opinion concurring in the denial of the request for rehearing, three judges addressed the retroactivity of severance:

> [The] dissent urges that to be consistent with *Harper*, retroactive application of *Arthrex* and its remedy is necessary. But that contention misreads *Harper*.... While the principle of retroactive application requires that we afford the same remedy afforded the party before the court to all others still in the appellate pipeline, judicial severance is not a 'remedy;' it is a forward-looking judicial fix.

9

*Anthrax, Inc.,* 941 F.3d at 766-67 (concurring opinion)

*Arthrex* noted that *Harper* requires that a court not "give prospective-only effect to our rulings, both as to the merits and as to the precise remedy." *Id*. at 767. Because the harm in *Arthrex* consisted of the adjudication of patent rights under an unconstitutional scheme, severance provided no remedy to plaintiff. Rather, "[o]ur decision that the statute can be rendered constitutional by severance does not remedy any past harm– it only avoids continuing harm in the future. It is only meaningful prospectively, once severance has occurred." *Id*.

The same holds true here. The plaintiffs in *AAPC* sought the right to speak going forward on the grounds that the statute, as written, is an unconstitutional content-based restriction. The Supreme Court denied that relief, but offered a remedy in the form of eliminating the content-based restriction. But, in our case, severance of the content-based restriction does not offer a "remedy" to correct *past* harm. Here, defendants do not seek the right to speak, having already done so. They seek the right to be free from punishment for speaking during a time when an unconstitutional content-based restriction existed. A forward-looking fix offers no remedy for this past wrong. Accordingly, because severance offers no remedy to defendants, the rule in *Harper* does not control. Rather, the Court agrees with the analysis in *Arthrex,* which relies on the Supreme Court's decision in *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S.Ct. 2183 (2020)(severing provision that would render agency decisions unconstitutional, but remanding the case to address whether the government's argument that the "civil investigation demand" was validly ratified)[1].

---

[1] The statute at issue in *Seila Law* violated Article II's separation of powers mandate because the head of the agency could be removed by the President only under certain limited circumstances. The

Plaintiff relies heavily on *Eberle v. People of the State of Michigan*, 232 U.S. 700 (1914) in support of the general proposition that unconstitutional amendments are void. In *Eberle*, the state legislature enacted a state law prohibiting the sale of alcohol if the voters voted in favor of prohibition. Subsequently, the legislature amended the statute to allow the sale of wine and cider under certain circumstances. Thereafter, the state filed criminal charges against defendants for selling beer in violation of the statute. The state court held that amendments to an otherwise valid statute are void if a later created exception causes equal treatment concerns. Defendants appealed to the Supreme Court, which upheld the convictions on the grounds that,

> The original [statute] had been held to be constitutional, and prohibited, without discrimination, the manufacture of all liquors. That valid act the defendants violated, and their conviction cannot be set aside on the ground that some or all of the electors voted to make the law operative in Jackson county under the supposition that, as wine could be manufactured, the equal protection clause of the Constitution would make it likewise lawful to manufacture beer and other liquors.

*Eberle*, 232 U.S. at 706.

The Court finds *Eberle* distinguishable from the instant case. As an initial matter, the state supreme court– not the Supreme Court– determined that the original statute was constitutional and that the subsequent amendment was "void." The principal issue before the Supreme Court was whether voter irregularity existed since voters may not have enacted the law in the first place had they known that the amendment violated equal protection. The Supreme Court held that it was for the state court to decide whether the nature of the provision voided the

---

Supreme Court severed the removal protection and concluded that "the agency may therefore continue to operate, but its Director...must be removable by the President at will." If severance applied retroactively, there would be no need for the past acts to be ratified.

11

election.

Plaintiff notes that *AAPC* cited *Eberle* favorably.  But, the *AAPC* plurality contained no discussion regarding *Eberle* and its effect on the retroactivity of severed statutes.  Rather, it cited *Eberle* and other cases from early last century to support the concept that severance of the government-debt exception does not affect the validity of the remainder of the statute.  Although the plurality mentions that an unconstitutional statutory amendment is a "nullity" and "void," and therefore has "no effect on the original statute," it does not follow that the result is that the amendment never existed in the first place.  The plurality could not have intended as such.  Although *dicta*, the plurality noted in footnote 12 that "no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment [in this case]...."  This statement would make no sense if the term "void" meant "void *ab initio*," because, in essence, footnote 12 indicates the statute *as amended* should be enforced with respect to government-debt collector robocalls made during this period.

Presumably, the plurality was rightly concerned with due process issues that would arise if courts treated the amendment as void *ab initio*.  But, if the statute is not considered void *ab initio*, it contains an unconstitutional content-based restriction that improperly favors some speech over other speech.  And, to treat it as void *ab initio* only as to certain parties would likely raise its own set of equal treatment concerns– the very concern raised by the *AAPC* dissent.  The fact remains that at the time the robocalls at issue in this lawsuit were made, the statute could not be enforced as written.  And, a later amendment to a statute cannot be retroactively applied.  *See, Grayned v. City of Rockford*, 408 U.S. 104, at n.2 (Supreme Court considers the facial

12

constitutionality of the statute in effect when the speech was undertaken, not statute as amended).  It would be an odd result to say the least if the judiciary could accomplish by severance that which Congress could not accomplish by way of amendment.

Defendant points that *Eberle* is different because the exception severed in *Eberle* was contained in a separate statutory provision, whereas here, the exception and the "exception to the exception" are contained within the same statutory provision.  Although the Court is not convinced that the *location* of the unconstitutional provision or clause matters much, the Court agrees with defendant that the provision at issue is unlike provisions severed in other cases.  Here, the original statute contained a valid time, place, and manner restriction, *i.e.*, it limited all robocall speech.  *Creasy v. Charter Communications, Inc.*, 2020 WL 5761117 at * 2 (noting that the Supreme Court observed that pre-2015, the TCPA provision constituted a valid time-place-manner restriction on speech).  The insertion of the government-debt exception transformed this valid time, place, and manner restriction into an unconstitutional content-based restriction.  This is unlike cases in which Congress adds an exception, the entirety of which results solely in unequal treatment, to an otherwise valid statute.  Although the plurality opinion characterizes the case as involving "equal treatment," the fact remains that at the time defendants engaged in the speech at issue, defendant was subject to an unconstitutional content-based restriction.[2]  The Court cannot wave a magic wand and make that constitutional violation

---

[2]   This is important because the majority of Justices agreed that the government-debt exception is a content-based restriction.  And, as the Fourth Circuit noted, this case involves a facial, as opposed to an as-applied, challenge.  *American Association of Political Consultants, Inc. v. Federal Communications Commission*, 23 F.3d 159, 164 (4th Cir. 2019)(noting that the case presents a facial challenge).  Thus, it is not relevant that defendants here did not

disappear.  Because the statute at issue was unconstitutional at the time of the alleged violations, this Court lacks jurisdiction over this matter.

### **CONCLUSION**

For the foregoing reasons, Realgy, LLC's Motion to Dismiss Amended Complaint (Doc.20) is GRANTED.  Defendant's request for oral argument is DENIED as unnecessary.

IT IS SO ORDERED.

 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge
Chief Judge

Dated: 10/29/20

---

engage in political speech.  *See*, *Grayned*, 408 U.S. 104.  Because it is a facial challenge, the Court agrees with defendant that it is fundamentally no different than if the regulation prohibited some political robocalls, while allowing others.