**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| ROBERTA LINDENBAUM, individually and on behalf of all others similarly situated, | Case No. 1:19-cv-02862-PAG |
| Plaintiff, | Judge Patricia A. Gaughan |
| v. | |
| REALGY, LLC d/b/a REALGY ENERGY SERVICES, a Connecticut limited liability company, and JOHN DOE CORPORATION, | |
| Defendants. | |

## REALGY, LLC'S REPLY BRIEF IN SUPPORT OF SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

I.  Introduction ........................................................................................................... 1

II.  Argument ............................................................................................................... 3

    A.  Plaintiff Misconstrues Realgy's Burden on Summary Judgment ........................... 3

    B.  Plaintiff Confirms She Has No Evidence that Realgy Is Directly Liable for
the Calls She Allegedly Received ............................................................................. 3

        i.  The Record Evidence More than Proves that Realgy Did Not Call
Plaintiff .............................................................................................................. 4

        ii.  The Evidence on Record Overwhelmingly Contradicts Plaintiff's
Story, Which Is Based on Inadmissible Hearsay ......................................... 6

    C.  Plaintiff Creates No Genuine Issue of Material Fact on Vicarious Liability.......... 9

        i.  Plaintiff Has No Evidence Identifying Who Placed the Calls,
Dooming All Three Vicarious Liability Theories....................................... 9

        ii.  The Record Shows YM Did Not Call Plaintiff, Further Precluding
Vicarious Liability ................................................................................... 10

        iii.  Plaintiff Fails to Address, and Thus Concedes, that Realgy Did Not
Ratify Prerecorded Calls ......................................................................... 12

        iv.  Plaintiff Confirms No Actual Agency Relationship Existed
Between Realgy and YM ........................................................................ 13

        v.  Plaintiff Does Not Dispute YM Acted Outside the Scope of Any
Purported Agency Relationship, If One Existed, Independently
Dooming Actual Authority ...................................................................... 14

        vi.  Plaintiff's Opposition Confirms Realgy Did Not Cloak YM with
Apparent Authority to Place Robocalls .................................................. 15

III.  Conclusion ......................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alkanani v. Aegis Def. Servs., LLC*,
  976 F. Supp. 2d 1 (D.D.C. 2013) ...........................................................................10

*Berry v. Kao*,
  No. 10-CV-2263, 2010 WL 11711520 (E.D. Pa. Oct. 22, 2010) ...........................................10

*Bluegrass Dutch Tr. Morehead, LLC v. Rowan Cnty. Fiscal Ct.*,
  734 F. App'x 322 (6th Cir. 2018) ..........................................................................9

*Cabrera v. Gov't Emps. Ins. Co.*,
  452 F. Supp. 3d 1305 (S.D. Fla. 2014) .................................................................14

*CaMAS Cap., Inc. v. Biodelivery Scis. Int'l, Inc.*,
  No. 304-CV-0092, 2006 WL 2472744 (S.D. Ind. Aug. 25, 2006) ..........................................6

*Clark v. City of Dublin*,
  178 F. App'x (6th Cir. 2006) ..........................................................................4, 13

*Commodity Futures Trading Comm'n v. Gibraltar Monetary Corp.*,
  575 F.3d 1180 (11th Cir. 2009) ..........................................................................13

*Cordoba v. DIRECTV, LLC*,
  No. 1:15-CV-3755, 2021 WL 6841777 (N.D. Ga. Feb. 12, 2021) .........................................15

*Hamilton v. Voxeo Corp.*,
  No. 3:07-CV-404, 2009 WL 690589 (S.D. Ohio Mar. 12, 2009)...........................................10

*Helping Hand Caregivers, Ltd. v. Darden Rests., Inc.*,
  No. 1:14-cv-10127, 2016 WL 7384458 (N.D. Ill. Dec. 21, 2016) .......................................15

*In re Monitronics TCPA Litig.*,
  No. 1:13-MD-2493, 2019 WL 7835630 (N.D.W. Va. Apr. 3, 2019) .......................................17

*Jones v. Federated Fin. Rsrv. Corp.*,
  144 F.3d 961 (6th Cir. 1998) ..........................................................................16

*KW Plastics v. U.S. Can Co.*,
  130 F. Supp. 2d 1297 (M.D. Ala. 2001) ..................................................................7

*Laborers' Pension Fund v. Midwest Brickpaving Inc.*,
  No. 18-CV-07729, 2020 WL 264752 (N.D. Ill. Jan. 17, 2020)............................................5

*Lentz v. City of Cleveland*,
No. 1:04 CV 669, 2011 WL 13294990 (N.D. Ohio Sept. 30, 2011) .........................................4

*Liadis v. Sears, Roebuck & Co.*,
47 F. App'x 295 (6th Cir. 2002) ...............................................................................................7

*McDermet v. DirecTV, LLC*,
No. CV 19-11322, 2021 WL 217336 (D. Mass. Jan. 21, 2021) .............................................15

*Morelock v. Richardson*,
No. 1:18-CV-76, 2020 WL 4060774 (E.D. Tenn. July 20, 2020) ............................................9

*Peters v. Lincoln Elec.*,
285 F.3d 456 (6th Cir. 2002) ....................................................................................................4

*Scott v. Harris*,
550 U.S. 372 (2007)...................................................................................................................9

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016).................................................................................................................18

*Steigerwald v. BHH, LCC*,
No. 1:15 CV 741, 2016 WL 6962593 (N.D. Ohio Nov. 29, 2016) ..........................................3

*Strauss v. CBE Grp.*,
173 F. Supp. 3d 1302 (S.D. Fla. 2016) ..............................................................................14, 16

*United States v. Zeidman*,
540 F.2d 314 (7th Cir. 1976) ....................................................................................................6

**Rules**

Fed. R. Evid. 807 .................................................................................................................8, 9

## I.    <u>Introduction</u>

Plaintiff's Opposition confirms Realgy is entitled to summary judgment.  Because Plaintiff admittedly failed to obtain evidence to support the essential elements of her TCPA claim, she pins her hopes on an inversion of the summary judgment burden, a mischaracterization of Realgy's arguments, and demonstrable falsehoods about Realgy's evidence.[1]  Plaintiff's arguments all fail.

To start, Plaintiff mischaracterizes Realgy's burden.  Because *Plaintiff* bears the burden of proof at trial, Realgy need not *dis*prove Plaintiff's allegations.  It need only show that Plaintiff lacks evidence to support the most essential requirements of her TCPA claim—that Realgy: (1) made the calls itself; or (2) can be vicariously liable for whomever did.  Realgy has more than met its burden of showing Plaintiff lacks evidence to prove either.

First, there is no genuine dispute that Realgy did not place any calls directly, as Realgy does not engage in any outbound telemarketing itself, and it has neither the technology nor the staff to do so.  Plaintiff does not even try to dispute this dispositive point.  And her attempt to sidestep it by attacking Realgy's description of its records search in its declaration is baseless.  In discovery, Plaintiff did not *request* the records she claims Realgy should have produced.  That aside, the declaration of Realgy's President establishes that he is familiar with Realgy's records, diligently searched for records of calls to Plaintiff, and found none.  His testimony about the lack of a business record is admissible and unsurprising because Realgy does not even have a phone system that could be used for robocalls.

Equally baseless is Plaintiff's reference to her self-serving declaration.  Because Plaintiff admittedly cannot identify the entity that made the two alleged calls—she instead speculates that it may have been one of five entities—the statement that "John Doe" callers *said* they were from

---

[1]    Realgy incorporates the terms it defined in its initial moving papers in its reply brief.

Realgy is obvious hearsay.  It cannot be admitted as an admission of a party opponent or an agent within the scope of the agency relationship because both require a predicate showing of *who made* the statement.  Nor can the statement be admitted for anything but the truth of the matter asserted, as Plaintiff nonsensically argues, because that statement is irrelevant for any non-hearsay purpose.  And even if these points were incorrect, Realgy's evidence overwhelmingly contradicts Plaintiff's self-serving and unsupported story.  Since Realgy does not itself conduct any telemarketing or have the technological ability to place robocalls—a fact Plaintiff does not and cannot dispute—it could not have possibly made the calls.

Second, there is no evidence that Realgy could be vicariously liable for whoever called Plaintiff, let alone any evidence from which she can create a genuine dispute.  Plaintiff did not take *any* depositions or issue *any* subpoenas and, as explained, has no evidence establishing who called her.  She admittedly does not know the answer to that fundamental question to this day. Vicarious liability simply cannot attach without evidence identifying the agent whose conduct the principal is supposedly liable for.  Nor does she have any evidence that YM—the only telemarketing entity Realgy had any relationship with—called her, further dooming any theory of vicarious liability.

But even assuming she had taken discovery and obtained proof that YM or an affiliate of YM's placed the calls, the three theories of vicarious liability would still fail.  Plaintiff does not address, and thus abandons, any argument that Realgy ratified the use of robocalls—a practice Plaintiff concedes Realgy and YM prohibited expressly.  And apart from the fact that actual agency cannot exist for expressly prohibited conduct, Plaintiff identifies no evidence that Realgy substantially controlled the manner and means of YM's day-to-day work (because it did not), a necessary requirement under a theory of actual agency.  Finally, Plaintiff's theory of apparent

authority is foreclosed under binding Sixth Circuit authority.  Realgy did not make *any* representations to Plaintiff about YM or remotely suggest it was allowed to place robocalls.

For these and the other reasons discussed below, the Court should grant Realgy's motion.

## II.    **Argument**

### A.    **Plaintiff Misconstrues Realgy's Burden on Summary Judgment.**

This Court has recognized that the moving party is entitled to summary judgment if it shows that "there is an absence of evidence to support an essential element of the nonmoving party's case for which he has the burden of proof." *Steigerwald v. BHH, LCC*, No. 1:15 CV 741, 2016 WL 6962593, at *8 (N.D. Ohio Nov. 29, 2016) (Gaughan, J.) (cits. omitted).  "Thus, plaintiff herein, who bears the burden of proof on her claims, may not merely point out that defendants have no evidence [to rebut plaintiff's claims] but she must point to evidence that [her claims can prevail]."  *Id.* (granting summary judgment for defendant).

Applied here, the Court's correct statement of the summary judgment standard requires Plaintiff to do more than argue that Realgy failed to adequately *dis*prove the requirements of the claim for which she has the burden of proof—that: (1) Realgy itself called Plaintiff; or (2) Realgy is vicariously liable for whichever (still) unidentified person or entity did place the calls.  She must instead point to sufficient admissible evidence in the record that supports the elements of her claim.

Plaintiff's "evidence" is either insufficient or nonexistent, precluding any genuine dispute of material fact.  In fact, she does not even bother specifically disputing Realgy's statement of material facts, highlighting her failure to adduce evidence to meet her burden.  *See* Opp. at 1.  This is unsurprising given Plaintiff's total lack of diligence in discovery.

### B.    **Plaintiff Confirms She Has No Evidence that Realgy Is Directly Liable for the Calls She Allegedly Received.**

Plaintiff cannot genuinely dispute that: (1) Realgy does not directly engage in ***any***

telemarketing; (2) there are no call recordings of the two alleged calls she received;[2] (3) the phone numbers that placed the alleged calls are not associated with Realgy; (4) Realgy's scripts contemplate live calls, not prerecorded ones; and (5) the only reason Plaintiff *believes* Realgy placed the calls is because unidentified "John Does" allegedly *claimed* they were from Realgy. Dkt. 44 at 4-5.  Ignoring that she cannot meet her burden on this record alone, she pivots and argues that Realgy fails to disprove that it called her.  Her arguments invert the burden (*supra* II.A.) and lack merit on many levels.

i.   The Record Evidence More than Proves that Realgy Did Not Call Plaintiff.

Plaintiff's assertion (at 3) that Realgy fails to show it did not call Plaintiff is too clever by half.  To begin, her attack on Realgy's declaration is beside the point.  Realgy did not "submit any of the records it contends it reviewed" for its declaration because Plaintiff ***did not request*** those records in discovery.  *See, e.g.*, Dkt. 44-6 at Req. for Prod. No. 7 (requesting "[a]ny documents ***that identify Plaintiff*** as being called by any Telemarketer or Lead Generator on Defendant's behalf") (emphasis added).  That aside, Plaintiff does not dispute, and thus concedes, that Realgy would not have those records had she asked for them.  *See Clark v. City of Dublin*, 178 F. App'x, 522, 524–25 (6th Cir. 2006) (failure to respond constitutes abandonment).  That is because Realgy admittedly does not place any marketing calls itself, lacks the technology to send prerecorded messages, and does not possess a dialer for outbound marketing calls that it could even search.[3]

---

[2]     Despite Plaintiff's assertion (at 3), Realgy also disputes whether Plaintiff received the calls. Plaintiff did not adduce any call recordings or authenticated call records in discovery.  She only produced two documents depicting calls from random telephone numbers, and now merely claims—in a declaration based on hearsay—that nameless individuals on those calls said they were from Realgy.  That is insufficient, and another ground to grant summary judgment.

[3]     On this point, her attack further overlooks that proving a negative—the lack of call records— necessarily means: (1) confirming the records do not exist; and (2) showing no such records *could have* existed.  Realgy does just that by submitting declarations, identifying policies prohibiting robocalls, and confirming it does not conduct telemarketing directly.  *See* Suppl. Vrtis Decl. at ¶¶ 4-5.

*See* Dkt. 44-3 ("Realgy Decl.") at ¶ 9; *see also* Ex. A ("Suppl. Vrtis Decl.") at ¶ 4.[4]  Plaintiff's own concessions thus render all her purported issues with Realgy's declaration and record search irrelevant.  Indeed, Plaintiff's attack on Realgy's record search is like criticizing a pharmacy for not producing business records showing that a pharmacist did not perform an operation.  No such records would exist because pharmacists do not operate.

Nonetheless, Realgy searched its business records of outbound calls and confirmed the obvious: no records of any calls to Plaintiff exist.  This testimony documenting the lack of a regularly kept business records is plainly admissible, and Plaintiff's arguments to the contrary (at 4) are meritless.  Despite her false assertions, Realgy's declarant (its President):

- **Did** explain that logs of its calls are made and kept in the ordinary course of business.  *See* Realgy Decl. at ¶¶ 3, 8 ("The information contained herein is based on my personal knowledge along with my review of the business records generated and maintained by Realgy . . . As part of its regularly conducted business, Realgy maintains logs of the company's outbound calls."); *see also* Suppl. Vrtis Decl. at ¶ 3.

- **Did** testify that he is familiar with relevant record keeping practices and specifically reviewed call logs.  *See* Realgy Decl. at ¶¶ 3, 8 ("***I routinely view***, search, and interpret those records ***while performing my job duties*** . . . Realgy has reviewed these records kept in the ordinary course and has no record of ever directly calling Ms. Lindenbaum[]") (emphasis added);[5] *see also* Suppl. Vrtis Decl. at ¶¶ 3, 6 (reiterating similar).

- And ***did*** put forth evidence that his (and Realgy's) searches were diligent.  *See* Realgy Decl. at ¶¶ 4, 8-12; *see also* Suppl. Vrtis Decl. at ¶¶ 3-6 (adding further detail on record search).

Thus, Plaintiff's arguments about Realgy's records searches are not only irrelevant, but based on

---

[4]  "[T]he Sixth Circuit has held that 'reply affidavits that respond only to the opposing party's brief are properly filed with the reply brief.'"  *See Lentz v. City of Cleveland*, No. 1:04 CV 669, 2011 WL 13294990, at *1 (N.D. Ohio Sept. 30, 2011) (quoting *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 476 (6th Cir. 2002)).

[5]  Plaintiff makes much ado about the fact that Realgy's declaration states that *"Realgy* [as opposed to Mr. Vrtis] has reviewed these records."  Opp. at 4 (emphasis in original).  Her argument asks the Court to elevate form above substance and view one sentence in a vacuum.  Plaintiff ignores the earlier paragraphs of the declaration (quoted above) and the fact that Mr. Vrtis is Realgy's President.

5

patently false characterizations of Realgy's declarations.[6]  And the authority she cites to make them is easily distinguishable.  *See, e.g.*, *CaMAS Cap., Inc. v. Biodelivery Scis. Int'l, Inc.*, No. 304-CV-0092, 2006 WL 2472744, at *3 (S.D. Ind. Aug. 25, 2006) (striking affidavit for lack of diligence in which declaration *only* said—unlike here—"I attempted to request information and perform a search…") (cited by Plaintiff at 6)); *see also United States v. Zeidman*, 540 F.2d 314, 318-19 (7th Cir. 1976) (affirming admission of evidence that a supervisor's "normal search" of records showed "no record").  Accordingly, Realgy has more than proved it did not make the calls, though it is not Realgy's burden to do so.

      ii.   <u>The Evidence on Record Overwhelmingly Contradicts Plaintiff's Story, Which Is Based on Inadmissible Hearsay.</u>

But even assuming Realgy's proof was insufficient, summary judgment would still be required because Plaintiff (who bears the burden of proof) has no admissible evidence that Realgy called her.  She concedes she has no call recordings, that she did not serve any subpoenas or take any depositions that might have allowed her to identify the callers, and that the only thing she has tying Realgy to the calls is her word that nameless callers said they were "from Realgy."  But she also effectively concedes that what unidentified callers purportedly said on a phone call is inadmissible hearsay by abandoning the notion that such out-of-court statements could qualify as party admissions (because they cannot).  *See Liadis v. Sears, Roebuck & Co.*, 47 F. App'x 295, 302–03 (6th Cir. 2002).  There are simply no facts from which any trier of fact can determine that the declarant (*i.e.*, the caller claiming to be from Realgy) was *actually* from Realgy.  And without

---

[6]     Further, if Plaintiff genuinely questioned the diligence of Realgy's search, she could have deposed it or issued additional discovery. Opp. at 6.  She chose to do neither, even though she requested and obtained additional time in discovery to do so.  *See* Dkt. 44 at 4 (explaining Plaintiff took no depositions and issued no subpoenas to YM, despite requesting additional time to do so); *see also Laborers' Pension Fund v. Midwest Brickpaving Inc.*, No. 18-CV-07729, 2020 WL 264752, at *2 (N.D. Ill. Jan. 17, 2020) ("The Federal Rules help those who help themselves.").

such facts, Plaintiff's allegations about what the unidentified callers said is inadmissible to prove the truth of the statements.  *See id.* (party admissions require some predicate that the declarant is in fact a party opponent).

Recognizing that she cannot introduce the hearsay statements as admissions, she urges the application of several narrow exceptions to the hearsay doctrine.  These arguments are frivolous.

Preliminarily, Plaintiff misses the point by arguing (at 14) that those out-of-court statements are admissible to explain what she did after the calls (*e.g.*, Googling Realgy and amending the Complaint).  Plaintiff does not seek admission to show how the statements affected her.  She introduces them for their hearsay purpose: to show Realgy made the calls.  If she could admit them this way, the exception would swallow the rule whole by allowing anyone to introduce hearsay to purportedly explain the most irrelevant of actions.  *See KW Plastics v. U.S. Can Co.*, 130 F. Supp. 2d 1297, 1299 (M.D. Ala. 2001) (explaining in analogous circumstances that "[v]erbal conduct intended to assert a fact is hearsay, regardless of its formulation").  But even assuming Plaintiff sought introduction to genuinely explain her actions, she overlooks that doing so has no probative value.  Why she acted does not establish that Realgy called her, as Plaintiff would have taken the *same* actions even if Realgy's vendor or someone *posing* as Realgy (a competitor, for instance) made the calls.

Nor can those statements be admitted for their truth as verbal acts, assuming the unidentified callers genuinely wanted to "engage Plaintiff in a contract."  Opp. at 15.  Plaintiff does not seek admission of the alleged statements for the purpose of establishing a contract; she seeks admission to prove Realgy placed the calls.  The hearsay statements therefore fall outside the doctrine's purview—even under *Plaintiff's* authority.  2 John W. Strong, McCormick on Evidence § 249, at 100–01 (5th ed.) ("When a suit is brought **for breach of a written contract** , no

7

one would think to object that a writing offered as evidence of the contract is hearsay . . . . A **narrow range** for this doctrine seems appropriate.") (cited by Sixth Cir. in both *Acree v. Tyson Bearing* and *Preferred Properties v. Indian River Estates*, which Plaintiff cites at 15; emphasis added).

Last, the general hearsay exception does not apply because Plaintiff cannot establish both prongs for admission.  Fed. R. Evid. 807(a)(1)-(2).  First, no guarantees (much less sufficient ones) of trustworthiness support the statements.  Plaintiff's actions after the calls are not probative, as explained above.  Her half-hearted assertion (at 15) that the phone calls were "not dissimilar" to Realgy's scripts also rings hollow, considering Realgy's express prohibition on prerecorded calls and the fact Plaintiff has no call recordings to corroborate her story.  Indeed, *every* energy provider—and scammer seeking sensitive financial data, for that matter—would have asked a prospect for their account and billing information.  Second, the statements are "not more probative on the point for which [they were] offered than any other evidence that the proponent can obtain through reasonable efforts."  Fed. R. Evid. 807(a)(2).  Plaintiff made **no effort** to depose YM or its affiliates or to serve any subpoenas—a point she does not address in her Opposition.  *See Bluegrass Dutch Tr. Morehead, LLC v. Rowan Cnty. Fiscal Ct.*, 734 F. App'x 322, 328 (6th Cir. 2018) (affirming exclusion under Rule 807 because the "record does not reflect plaintiff pursued" trying to obtain an affidavit from the declarants).

Plaintiff is thus left with even less than what she started with: hearsay statements from admittedly unidentified callers overwhelmingly contradicted by sworn declarations establishing the absence of records (and recordings) of either call Plaintiff allegedly received; scripts that contemplate live calls, not ones placed by a machine; policies prohibiting the use of robocalls

expressly; and evidence that Realgy did not use technology that could send robocalls. *See* Dkt. 44 at 2-6, 8; Realgy Decl. at ¶ 9; *see also generally* Suppl. Vrtis Decl.

These circumstances do not require the Court to weigh evidence or judge credibility, try as Plaintiff might to muddy the waters with speculative questions that she could have answered had she conducted discovery.[7] They instead mandate summary judgment for Realgy, as Plaintiff simply has no admissible evidence to support her claims and all admissible evidence confirms Realgy did not (and could not) have possibly called her. *See Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (requiring summary judgment where one story is "blatantly contradicted by the record"); *Morelock v. Richardson*, No. 1:18-CV-76, 2020 WL 4060774, at *2 (E.D. Tenn. July 20, 2020) ("It would undermine . . . summary judgment if a party could defeat [it] by replacing conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.) (cleaned up).[8]

**C.  Plaintiff Creates No Genuine Issue of Material Fact on Vicarious Liability.**

Nor does Plaintiff have evidence to prove any of the three vicarious liability theories available under federal common law agency: ratification, actual agency, or apparent authority.

   i.   Plaintiff Has No Evidence Identifying Who Placed the Calls, Dooming All Three Vicarious Liability Theories.

At the outset, none of Plaintiff's theories of vicarious liability hold water for a threshold reason: She mustered no evidence identifying the entity that placed the calls, as explained above. Was it the long-terminated vendor YM, someone YM hired without Realgy's knowledge or

---

[7]    As noted, Plaintiff did not take any depositions or serve any subpoenas during the entire phase 1 discovery period. The Court should not reward Plaintiff's total lack of diligence.

[8]    Plaintiff's citation (at 13) to *Hamilton v. Voxeo Corp.*, No. 3:07-CV-404, 2009 WL 690589, at *3 (S.D. Ohio Mar. 12, 2009) is misplaced. That case addressed whether the defendant qualified as a common carrier under the TCPA. It had nothing to do with the identity of the caller—which is a basic fact, not a legal status—or whether hearsay was enough to survive summary judgment, so it is irrelevant.

permission, a scammer trying to steal Plaintiff's information, or a competitor?  These questions remain unanswered to this day, thanks mostly to Plaintiff's failure to conduct discovery.  Vicarious liability, of course, cannot attach without identifying the person or entity that engaged in the conduct for which a plaintiff seeks to hold a defendant vicariously liable.  *See, e.g.*, *Alkanani v. Aegis Def. Servs., LLC*, 976 F. Supp. 2d 1, 11-12 (D.D.C. 2013) (granting summary judgment because plaintiff "ha[d] the burden of proving" vicarious liability but could not identify "the principal or agent") (citing¸ *inter alia*, Restatement (Third) of Agency); *Berry v. Kao*, No. 10-CV-2263, 2010 WL 11711520, at *3 (E.D. Pa. Oct. 22, 2010) (explaining that a vicarious liability theory requires plaintiff to "(1) identify the agent or employee; and (2) set forth the agent's authority and how his tortious acts fall within the scope of that authority.")

> ii.    The Record Shows YM Did Not Call Plaintiff, Further Precluding Vicarious Liability.

Setting this dispositive point aside, the record evidence shows that YM—the only entity Realgy had a relationship with and thus the only entity for which Realgy could *potentially* be vicariously liable[9]—did not place the calls.  *See* Realgy Decl. at ¶ 4 (explaining YM was only company Realgy contracted with).  This further precludes vicarious liability from the start.

To this end, Plaintiff's attacks on YM's declaration fail for all the same reasons Realgy outlined above.  *Supra* II.B.i.  YM *did* explain that call logs are naturally kept in the ordinary course of a telemarketing campaign and that it found no calls to Plaintiff.  YM Decl. at ¶¶ 3, 4 ("This declaration is based on . . . documents which are maintained in the ordinary course of business by YM and which were made at or about the time of the events described therein . . . YM routinely reviewed records . . ."); *see also* Ex. B ("Suppl. YM Decl.") at ¶ 7 (explaining YM also

---

[9]    If Plaintiff now claims one of YM's affiliates placed the calls (YM Decl. at ¶ 4), such a vicarious liability theory fails because there is no evidence that Realgy had any relationship whatsoever with those independent entities (it did not).  *See* Realgy Decl. at ¶ 4.

did not use the phone numbers that purportedly called Plaintiff on the Realgy campaign).  YM *did* testify that it is familiar with relevant campaign record keeping practices.  *See* YM Decl. at ¶¶ 2, 4, 8 ("This declaration is based on *my . . . review of documents* . . . YM routinely reviewed records of calls they [*i.e.*, YM's contractors] made in the in the ordinary course of the Realgy campaign.") (emphasis added).[10]  And YM *did* establish that its search was diligent.  *See* YM Decl. at ¶¶ 4, 6-8 ("YM routinely reviewed records of the calls . . . YM reviewed calls placed by the agents working on the Realgy campaign to check for compliance and did not come across any instances where the agents used pre-recorded messages"); *see also* Suppl. YM Decl. at ¶¶ 5-7.

Plaintiff's contentions about YM's policies are even more meritless on this front.  Plaintiff does not dispute that YM prohibited robocalls but still argues (at 7-8) that Realgy's motion "overstates" its contract with YM—ignoring that the contract: (1) requires YM to abide by all state and federal telemarketing laws; *and* (2) incorporates by reference the policy against robocalls.  *See, e.g.*, Dkt. 44, Ex. C at Sched. G, Item 8 (requiring that policies for "calling practice and messaging" be "[e]stablished before sales are begun").  She also ignores (at 8) that YM *has* offered evidence of compliance.  *See* Dkt. 44-4 ("YM Decl.") at ¶ 8 ("YM also took several measures to determine if [its contractors] followed its policies . . . [including] review[ing] calls placed by the agents. . . and did not come across any instances where the agents used pre-recorded messages.") (emphasis added).  And her assertion (at 9) that YM's policies are "contradictory" is wrong and beside the

_____

[10]  Plaintiff also contends (at 5-6) that it is unclear if Mr. Diaz or YM reviewed its three contractors' records or was familiar with their record keeping practices.  That too is false.  Mr. Diaz testified *expressly* that: (1) YM managed "marketing campaigns for its clients"; (2) engaged "Proactive BPO, SkyMax Contact Center, and Sales Expert BPO" and "routinely reviewed records of the calls **they made** in the ordinary course"; and (3) "reviewed calls placed by the agents working on the Realgy campaign to check for compliance." *See generally* YM Decl. (emphasis added); *see also* Suppl. YM Decl. at ¶ 5 ("I am also personally familiar with how all three entities maintained their call records. . .because I had access to such records and routinely obtained information about specific calls throughout the Realgy campaign.").

point.[11]  Even assuming certain provisions are inconsistent (they are not), Plaintiff does not and cannot argue that Realgy's express prohibition on robocalls was unclear or inconsistent with any other provision.  YM itself testified as much.  *See, e.g.*, YM Decl. at ¶ 7 ("YM (and Realgy) strictly prohibited such calls for all Realgy campaigns, pursuant to YM's policies and procedures and YM's contract with Realgy.").

At bottom, the *only* evidence in the record shows that Realgy's exclusive Ohio vendor during the subject period did not call Plaintiff on Realgy's behalf, further mandating summary judgment in Realgy's favor on vicarious liability.  And even setting aside the foregoing two dispositive points, Plaintiff's vicariously liability claim would still fail for the reasons explained below.

> iii.  <u>Plaintiff Fails to Address, and Thus Concedes, that Realgy Did Not Ratify Prerecorded Calls.</u>

First, Plaintiff cannot create a genuine dispute of fact as to ratification because she does not dispute that Realgy: (1) did not accept any benefits from any calls to Plaintiff; and (2) had no information that would have suggested that unauthorized prerecorded calls were being sent on its behalf by YM (because they were not).  Dkt. 44 at 15.  In fact, she does not even address ratification, conceding she could never establish ratification.  *See Clark*, 178 F. App'x, at 524–25.

Nor could Plaintiff have disputed Realgy's points about ratification.  There is no evidence that Realgy ever expressly or impliedly permitted YM's use of robocalls.  To the contrary: Realgy had no complaints about robocalls before Plaintiff's lawsuit (*see* Dkt. 10 at 8); Realgy expressly

---

[11]  For example, Plaintiff asserts (at 9) that the policies and scripts conflict because one requires YM's representative to provide a name before transferring to third-party verification while the other is silent on this point.  That is not contradictory; it shows that YM's policies *supplemented* the script.  Plaintiff overlooks that not all business policies—even the irrelevant ones she pins her hopes on—are perfect.  The relevant point is that *none* of the documents permit robocalls and instead contemplate only live calling, a restriction/requirement that YM testified it understood clearly.

prohibited the use of robocalls (*see generally, e.g.*, Realgy Decl.; Suppl. Vrtis Decl.; YM Decl.;); and YM "reviewed calls placed by agents working on the Realgy campaign and did not come across any instances where the agents use pre-recorded messages" (*see* YM Decl. at ¶ 8).

### iv. Plaintiff Confirms No Actual Agency Relationship Existed Between Realgy and YM.

No triable issues of fact exist on the essential elements of Plaintiff's actual agency theory either. *See* Opp. at 16–18. Plaintiff does not dispute that Realgy disclaimed any agency relationship in its agreement with YM, which is "palpable evidence" that no agency relationship existed. *Commodity Futures Trading Comm'n v. Gibraltar Monetary Corp.*, 575 F.3d 1180, 1189 (11th Cir. 2009). And Plaintiff's attempt to rebut the presumption that the parties' agreement means what it says falls flat. Plaintiff contends (at 16-17) that Realgy had "control" over YM, but her conclusory assertion ignores on-point authority (including from this Circuit) that substantial control of the "manner and means" of YM's day-to-day work is required. *Keating v. Peterson's Nelnet, LLC*, 615 App'x 365, 373 (6th Cir. 2015); *see also* Dkt 44 at 10-11. Plaintiff states (at 17) that Realgy: (1) required YM to disclose who would work on the campaign and whether they had prior complaints; (2) provided scripts; and (3) could audit sales calls and records. These measures concern quality control exclusively. As such, they do not constitute "substantial control" over YM's operations sufficient to create actual agency. *See, e.g.*, *Strauss v. CBE Grp.*, 173 F. Supp. 3d 1302, 1310 (S.D. Fla. 2016) (quality control measures such as random audits of calls, onsite visits every 6–9 months, and reviews of collection reports insufficient to create disputed material fact about nonexistent agency relationship).

Plaintiff's theory of the control necessary to establish actual agency is also untenable because it would render Realgy liable for trying to *prevent* TCPA violations. If basic quality control measures could give rise to actual agency, Realgy would have been better off ignoring

13

compliance altogether.  That principle is unsound and, of course, finds no legal support.

Plaintiff's other points fare no better.  Realgy did not have the right to "terminate any employee of YM" or stop them for working for YM's other clients, as Plaintiff falsely claims (at 17).  Realgy could instead only remove a YM representative from a *Realgy campaign*—another quality control measure to ensure policy compliance.  Suppl. Vrtis. Decl. at ¶ 8.  And Plaintiff does not dispute (and has no evidence) that: Realgy did not have the right to hire, train, or supervise YM's employees; YM determined the days and hours of its operations, not Realgy; YM provided its own office space and equipment to conduct business, not Realgy; and YM lacked access to Realgy's billing and back-end customer systems—all of which are independent reasons to grant summary judgment.  *See* Dkt. YM Decl. at ¶¶ 8, 10; Suppl. Vrtis. Decl. at ¶¶ 7-8; *Cabrera v. Gov't Emps. Ins. Co.*, 452 F. Supp. 3d 1305, 1318 (S.D. Fla. 2014) (granting summary judgment where defendant had no "role in the hiring, training, supervising" vendor's employees); *Strauss*, 173 F. Supp. 3d at 1310 (same, where vendor had no access to defendant's systems).

Plaintiff therefore has not, and cannot, carry her burden to establish an actual agency relationship between Realgy and YM.

v.  <u>Plaintiff Does Not Dispute YM Acted Outside the Scope of Any Purported Agency Relationship, If One Existed, Independently Dooming Actual Authority</u>**.**

Even assuming an agency relationship, Plaintiff does not dispute that YM was acting outside the scope of such agency if it made any prerecorded robocalls.  Plaintiff has zero evidence (and none exists) that Realgy ever authorized YM to violate its Agreement and express prohibition on the use of prerecorded robocalls.  *See McDermet v. DirecTV, LLC*, No. CV 19-11322, 2021 WL 217336, at *7 (D. Mass. Jan. 21, 2021) ("Actual authority is an agent's power to act based on the *principal's manifestations* to the agent.") (emphasis added).

This independently dooms Plaintiff's actual agency theory.  Actual authority cannot exist

14

for conduct principals expressly prohibited their agents from engaging in. *See*, *e.g.*, *id.* at *8 (no actual authority where principal prohibited the conduct at issue); *Cordoba v. DIRECTV, LLC*, No. 1:15-CV-3755, 2021 WL 6841777, at *8 (N.D. Ga. Feb. 12, 2021) (same); *Helping Hand Caregivers, Ltd. v. Darden Rests., Inc.*, No. 1:14-cv-10127, 2016 WL 7384458, at *4 (N.D. Ill. Dec. 21, 2016) (holding telemarketer lacked actual authority to conduct fax marketing because it was only told to advertise via email).

Plaintiff's attempt to distinguish Realgy's supporting authority (at note 8) by arguing the cited cases "contain much more specific prohibitions" is also absurd. Realgy's only ever permitted live, not automated, calling. Realgy Decl. at ¶ 5; YM Decl. at ¶ 4. And its prohibitions were equally, if not more, specific than those in the cited cases because Realgy's prohibit *both* robocalls *and* any calls that violate the law. *Compare, e.g.*, *Paldo Sign v. Wagener equities*, 825 F.3d 793, 798 (7th Cir. 2016) (prohibiting sending faxes without consent), *with* Dkt. 44 at Ex. C, Ex. 2 (prohibiting "Robot Calls, Automated recording message System, and [calling] Federal DNC Customer[s]") *and* Ex. C, Ex. 1 at ¶ 12 (requiring compliance with all "federal, state, and local laws, rules, and regulations, including, but not limited to public utility statutes…"). Plaintiff does not dispute that Realgy and YM specifically prohibited the use of prerecorded robocalls. *See* YM Decl. at ¶ 7 ("YM (and Realgy) strictly prohibited such [robo] calls for all Realgy campaigns"). Tellingly, she also concedes Realgy never implicitly permitted robocalls by abandoning her ratification theory, as discussed *supra* in Section II.B.1.

     vi.   <u>Plaintiff's Opposition Confirms Realgy Did Not Cloak YM with Apparent Authority to Place Robocalls.</u>

Plaintiff also fails to meet her burden to establish apparent authority, assuming for argument's sake that Plaintiff had evidence that YM called her. She concedes that Realgy made no representation to Plaintiff about YM or its authority to place robocalls, which alone destroys

her apparent authority theory under binding Sixth Circuit authority.  *See Keating,* 615 F. App'x at 373-74 ("under the theory of apparent authority, a principal will incur liability for the acts of an 'agent' if the principal 'held the agent out to third parties as possessing sufficient authority ***to commit the particular act in question***'") (*Jones v. Federated Fin. Rsrv. Corp.*, 144 F.3d 961, 965 (6th Cir. 1998) (emphasis added)).

Unsurprisingly, Plaintiff ignores this dispositive authority and points instead (at 19) to irrelevant FCC *guidance* on examples a court *may* consider in an apparent authority analysis for vendors *hired to make specific types of calls*—not third parties *expressly prohibited* from making such calls, like YM.  That guidance, even if considered, only bolsters *Realgy's* position.  For instance, in *Strauss*, the court considered the FCC's guidance and held no apparent agency exists where, as here, the defendant gave a vendor limited information (but did not give access to its entire systems) and even participated in preparing scripts.  *Strauss*, 173 F. Supp. at 1309–10 ("[T]his evidence is insufficient to create an issue of disputed material fact for trial regarding an agency relationship"); *see also* Suppl. Vrtis. Decl. at ¶ 7 (explaining YM could access one aspect of Realgy's systems only for inputting sales information).

The cases Plaintiff cites (at 19-20) are also distinguishable.  For example, there are no "manifestations" about the use of prerecorded robocalls that are "traceable" to Realgy here.  *See In re Monitronics TCPA Litig.*, No. 1:13-MD-2493, 2019 WL 7835630, *10 (N.D.W. Va. Apr. 3, 2019) (cited by Plaintiff).  If Plaintiff's theory that principals can cloak their agents with apparent authority for conduct they expressly prohibited, then vicarious liability would mirror strict liability. That is, of course, not the law.

In the end, Plaintiff has no evidence to support any theory of vicarious liability, let alone evidence from which to create a genuine dispute.  In fact, the available evidence *negates* the

viability of any vicarious liability theory as to YM or any of its own vendors, if any of them violated Realgy's instructions and placed the calls at issue.  This independently entitles Realgy to summary judgment.

## III.    <u>Conclusion</u>

Despite years of litigation, Plaintiff has mustered no admissible evidence to support her TCPA claims.  Rather, discovery only proved what Realgy stated from the outset: that neither Realgy nor anyone authorized by it made either of the two prerecorded calls Plaintiff allegedly received.  Before Plaintiff may engage in pointless, burdensome class discovery against the wrong defendant,[12] the Court should grant summary judgment.

---

[12]    As shown above, all the evidence confirms that Realgy did not place or authorize any calls to Plaintiff, meaning Realgy is the wrong defendant.  Summary judgment must therefore also be granted on standing grounds because Plaintiff cannot establish that her purported injury is traceable to Realgy.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (noting standing is the plaintiff's burden to prove).

DATED: May 16, 2022.

Respectfully submitted

**KABAT CHAPMAN & OZMER LLP**

*/s/ Matthew A. Keilson*
Ryan D. Watstein (*pro hac vice*)
rwatstein@kcozlaw.com
Joseph Scott Carr (Ohio Bar No. 0098247)
scarr@kcozlaw.com
Matthew A. Keilson (*pro hac vice*)
mkeilson@kcozlaw.com
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
(404) 400-7300

*Counsel for Defendant*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing (as well as Realgy's initial moving papers) adheres to the page limitations set forth in Local Civil Rule 7.1(f) with respect to cases assigned to the complex track.

## CERTIFICATE OF SERVICE

I certify that on May 16, 2022, I filed the foregoing using the Court's CM/ECF system, which will send a notice of electronic filing to all parties of record.

*/s/ Matthew A. Keilson*
Matthew A. Keilson (admitted *pro hac vice*)

*Counsel for Defendant*

19